459 So.2d 1384 (1984)
Lyndon Dale BERTHELOT, et al.
v.
Ivan IMES, Sr., et al.
No. 83 CA 1283.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
*1385 Clinton Hyatt, Jr., Baton Rouge, for plaintiff-appellant.
Daniel R. Atkinson, Baton Rouge, for defendant-appellee.
Before COLE, CARTER and LANIER, JJ.
CARTER, Judge.
This is an appeal from the trial court award of damages sustained as a result of an automobile accident.

*1386 FACTS
On September 26, 1981, Mrs. Rebecca Berthelot, accompanied by her two minor children Beth Berthelot and Robbie Key, was involved in an automobile accident at the intersection of Sherwood Forest Boulevard and Harrell's Ferry Road in Baton Rouge, Louisiana. Mrs. Berthelot was driving a 1979 Oldsmobile in an easterly direction on Harrell's Ferry Road. When Mrs. Berthelot approached the intersection at Sherwood Forest, she had a favorable light. As she proceeded through the intersection, Mrs. Berthelot's vehicle was struck on the left rear side by a 1977 Oldsmobile station wagon driven by Mr. Ivan Imes, Sr. Upon impact, the Berthelot vehicle was forced into a third vehicle which was within the intersection headed west on Harrell's Ferry Road attempting a left turn. After this second impact, the Berthelot vehicle veered to the right and came to rest upon the apron of a service station on the southeast corner of the intersection.
Plaintiffs filed suit on January 22, 1982, alleging that Ivan Imes, Sr., driver of the vehicle, Ivan Imes, Jr., owner of the vehicle, and Maryland Casualty Company, Imes's insurer, were liable in solido for plaintiffs' injuries. Defendants answered denying plaintiffs' allegations and alternatively alleged that Mrs. Berthelot was either contributorily negligent, comparatively negligent, or had assumed the risk.
At trial, all counsel stipulated that: (1) based upon his negligence, Ivan Imes, Sr. was liable for the damages sustained; (2) Ivan Imes, Sr. and Ivan Imes, Jr. were released from any further liability; (3) all payments to plaintiffs for the injuries sustained would be collected from Maryland; and, (4) Maryland would not assert any coverage defenses in this claim.
The trial court determined that Robbie Key's knee had been injured prior to the automobile accident and awarded Robbie Key $2,000.00 for the aggravation of this pre-existing condition, together with special damages of $316.00.[1] Mrs. Berthelot was awarded $25,000.00 for her lower back injuries, together with special damages of $11,311.09, including $2500.00 for future medical expenses.[2] The trial court noted that a greater award was not given because an award for other damages would be too speculative. The court did not award damages for neck injuries or for urinary or stool problems because the evidence did not establish that the automobile accident had caused these problems. Beth Berthelot was awarded $2,000.00 for her injuries, together with special damages of $410.00.[3]
From this judgment, Mrs. Berthelot and Robbie Key appeal. Plaintiffs contend that the trial court erred in finding that:
(1) Robbie Key had sustained an injury to his left knee prior to the accident;
(2) Robbie Key failed to establish by a preponderance of the evidence that the automobile accident caused the injury to his left knee;
(3) The injury to Robbie Key's left knee was merely the aggravation of a pre-existing condition;
(4) The opinion of the defendant's physician was entitled to a weight equal to or greater than the weight accorded the opinion of the plaintiff's physician;
(5) Any award for Mrs. Berthelot's recommended surgery is too speculative; and,
(6) Mrs. Berthelot's cervical injuries are not causally related to the accident.
In their seventh assignment of error, plaintiffs contend that the award of damages to Robbie Key and Mrs. Berthelot is inadequate. *1387 Defendant Maryland Casualty Company answered plaintiffs' appeal contending that the trial court awards were excessive.

ASSIGNMENTS OF ERROR NOS. 1, 2, AND 3
In these assignments of error, plaintiffs contend that the injury to Robbie Key's left knee was a result of the automobile accident on September 26, 1981. Plaintiffs reason that they sustained the burden of establishing a causal connexity between the automobile accident and the injury. In support of this contention plaintiffs rely upon the testimony of the members of Robbie Key's family which indicates they were unaware of any injury to Robbie's left knee prior to September 26, 1981. Plaintiffs also rely on the testimony of Dr. John Loupe, treating physician.
The trial judge, in his written reasons for judgment, correctly and articulately evaluated the testimony as follows:
Robbie was ... seen in the emergency room of Our Lady of The Lake Hospital on the afternoon of the accident by the emergency room physician, Dr. Morris. The medical record of Dr. Morris (P-14A) indicates abrasion of the right knee, which obviously is incorrect, and also X-rays were ordered for the left knee which indicated soft tissue swelling but no fracture or dislocation noted. Robbie was next seen by Dr. W. Joseph Laughlin, orthopedic surgeon, on the 29th day of September, 1981. His physical examination revealed minimal tenderness to palpation of the left knee just below the knee cap. There was no evidence of torn ligaments and X-rays showed no evidence of fracture. Dr. Laughlin's initial impression was contusion of the left knee and he recommended activity restriction for a week and Robbie was asked to return on October the 7th for a follow-up visit. On this subsequent visit Robbie related that he had developed some swelling in the knee over the past week. The knee was aspirated and approximately an ounce of fluid was removed. Dr. Laughlin put him on crutches and asked him to return the following week. He was seen again on October 14th, his father had brought him in for that routine follow-up visit. Dr. Laughlin was still of the opinion that the problem would resolve on its own without significant residual. That was Dr. Laughlin's last contact with Robbie as he was next seen by Dr. John Loupe, also an orthopedic surgeon, on October 16, 1981.
According to Dr. Loupe (P-12) Robbie gave him a history of having injured his left knee at the beginning of football season and that he had had a problem with the knee since that time. He also informed Dr. Loupe of the automobile accident on September 26th, 1981. It was Dr. Loupe's impression, at the examination on October the 16th, that Robbie had sustained a tear of his medial meniscus of his left knee and suggested surgery. On November 20th, 1981 the Doctor performed an arthoscopic examination followed by an arthoscopic medical minescectomy. The evidence presented on the trial of his case, including the opinions of the two orthopedic surgeons who treated Robbie, presents a serious question as to causal connection between the injury sustained in the automobile accident on September 26th, 1981 and the surgery performed upon Robbie by Dr. Loupe for the repair of the medial meniscus to his left knee.
On direct examination at the trial Robbie was unequivocal that he had had no prior injuries to the left knee before the accident of September 26th, 1981, and further that he had participated in no further sports activities after Dr. Laughlin's initial examination of his knee on September the 29th of 1981. However, on cross-examination it became clear that despite Dr. Laughlin's instructions to restrict his activity he participated, with a great deal of success, in two football games. One on the same day of his examination, September the 29th and again on October the 6th, 1981, the day before his second visit to Dr. Laughlin. Also by the testimony of Tim Gonda, the high school trainer at Robbie's school, it was established in the opinion of the *1388 Court that Robbie indeed had sustained an injury to his left knee on September the 8th, 1981 (Md-4). This latter mentioned injury undoubtedly is the injury that Dr. Loupe indicated in his deposition that Robbie had given to him in his history in his examination of Robbie on October the 16th, 1981. Robbie denies giving this information to Dr. Loupe, but the evidence in the opinion of this Court preponderates to the fact that he did. Dr. Loupe was not able to give an opinion as to whether the meniscus tear was due to football or the automobile accident, and of course Dr. Laughlin never diagnosed the condition during his examination and treatment of Robbie. It is only Robbie's testimony that indicates that the injury was sustained as a result of the car accident.
The Court finds that upon a careful consideration of all the evidence that plaintiff has failed in his burden of establishing by a preponderance, what is more probably so than not, that the automobile accident caused the torn meniscus. Certainly, it has been established that Robbie's knee was injured in the accident, in fact the accident aggravated, to some extent, a pre-existing injury to the knee, and the plaintiff is entitled to some compensation for that injury.
It is well settled in Louisiana that the trial court's findings of fact are entitled to great weight, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), and we may not substitute our own evaluations and inferences for the reasonable evaluations and inferences of the trial court unless those conclusions are clearly erroneous. Abadie v. Morales, 391 So.2d 974 (La.App. 4th Cir. 1980); Esta v. Dover Corp., 385 So.2d 439 (La.App. 1st Cir.1980), writ denied, 392 So.2d 690 (La.1980).
A thorough review of the record convinces us that the trial court findings with regard to the cause of damage to Robbie Key's knee is correct. Accordingly, assignments of error nos. 1, 2, and 3 are without merit.

ASSIGNMENT OF ERROR NO. 4
Plaintiffs next assert the trial court erred in attaching weight to the opinion of the defendant's physician that was equal to or greater than the weight it attached to the opinion of the plaintiff's physician. In essence, they contend the treating physician's opinion is entitled to greater weight than the non-treating physician's opinion.
It is well settled that the testimony of the treating physician is entitled to greater weight than the testimony of a physician who examines the patient only once or twice. Cason v. Diamond M Drilling Co., 436 So.2d 1245 (La.App. 1st Cir.1983), writ denied, 441 So.2d 1221 (La. 1983); Lockhart v. Pargas, Inc., 271 So.2d 664 (La.App. 1st Cir.1972), writ denied, 273 So.2d 844 (La.1973). However, the weight afforded such testimony is largely dependent upon the physician's qualifications and the facts upon which his opinion is based. Walker v. Marcev, 427 So.2d 678 (La.App. 4th Cir.1983), writ denied, 433 So.2d 182 (La.1983). Credibility evaluations and factual resolutions are the province of the trier of fact. Jones v. Thibodeaux, 445 So.2d 44 (La.App. 4th Cir.1984), writ denied, 448 So.2d 112 (La.1984). Our standard of review as stated in Arceneaux v. Domingue, supra, mandates that the findings of the trial court not be disturbed unless they are clearly erroneous.
The trial court found that Dr. Ioppolo, defendant's physician, was in a position similar to that of Dr. Razza, plaintiff's physician. Dr. Razza had not seen Mrs. Berthelot and did not become her treating physician until she was hospitalized on October 10, 1982, more than a year after the accident. Dr. Ioppolo had the hospital records, x-rays, and other diagnostic studies performed by Dr. Razza. In addition, Dr. Ioppolo took Mrs. Berthelot's history and performed a physical examination. Accordingly, the trial judge felt that Dr. Razza had no additional facts which would entitle his opinion to greater weight than the opinion of Dr. Ioppolo.
We cannot say that the trial judge was manifestly erroneous in not attaching *1389 greater weight to Dr. Razza's testimony. Therefore, assignment of error no. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
In this assignment of error, plaintiffs contend that the trial court erred in not awarding Mrs. Berthelot damages for the surgery Dr. Razza recommended.
Under LSA-C.C. art. 1934(3), the quantum of damages for offenses and quasi-offenses are within the discretion of the trial court. Where a legal right to recovery exists, but the damages cannot be exactly estimated, the trial court has reasonable discretion to assess such damages based on the facts and circumstances of the case. Nat. Roofing & Siding v. Gulf Coast Oil Co., 422 So.2d 204 (La.App. 4th Cir.1982).
In addition to the testimony by Dr. Ioppolo that the surgery recommended by Dr. Razza was not necessary, Mrs. Berthelot admitted that to date, she has refused to submit to the surgery. However, in the event she agrees to the surgery, Mrs. Berthelot testified that the procedure would cost approximately $20,000.00.
The trial judge determined that an award of damages for the surgery would be speculative. A review of the record convinces us that the trial court did not err in refusing to grant this award. Therefore, assignment of error no. 5 is without merit.

ASSIGNMENT OF ERROR NO. 6
Plaintiffs also contend the trial court erred in finding that Mrs. Berthelot's cervical injuries were not causally related to the automobile accident of September 26, 1981.
Immediately after the accident, Mrs. Berthelot complained of and was treated for a laceration to her lip and injury to her lower back and coccyx. In October, 1982, while in the hospital under Dr. Razza's care, Mrs. Berthelot complained for the first time of neck pain spreading to her left shoulder. Dr. Razza ordered x-rays of Mrs. Berthelot's neck and found evidence of early spondylosis with osteophyte formation at the C5-6 level. Although Mrs. Berthelot testified that she had been experiencing these pains in her neck since the accident, this was the first time she had voiced such a complaint to her physicians. This complaint came more than a year after the automobile accident. Moreover, no medical testimony substantiates her assertion that the accident caused this current malady. The trial judge found, and we agree, that the evidence fails to establish that her neck injuries were caused by the accident of September 26, 1981. Therefore, assignment of error no. 6 is without merit.

ASSIGNMENT OF ERROR NO. 7
In their last assignment of error, plaintiffs contend that the trial court erred in the quantum of its award. Specifically, plaintiffs contend that the awards inadequately compensate plaintiffs for their injuries. In answering plaintiffs' appeal, defendant, Maryland Casualty Company, contends that the trial court erred in awarding excessive damages to Robbie Key and Mrs. Berthelot.
In awarding damages for personal injuries and pain and suffering, the trier of fact is granted great discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Ward v. La. & Ark. Ry. Co., 451 So.2d 597 (La.App. 2nd Cir.1984). Our review in such cases is limited to determining whether the trier of fact abused this discretion, given the facts and circumstances of this case. Reck, supra; and Ward, supra.
In the matter sub judice, the trial court noted in its written reasons for judgment that Mrs. Berthelot led an active life prior to the accident. Further, it found that she sustained a cut lip requiring some stitches, a sore coccyx, and various bumps and bruises as a result of the accident. Considering these facts and Dr. Razza's assessment of partial anatomic disability of twenty percent, the trial court awarded Mrs. Berthelot $25,000.00 for general damages, together with special damages of $11,311.09. The award did not include damages for Mrs. Berthelot's neck malady and subsequent urinary and stool dysfunctions, since the trial court found these ailments were not caused by the accident. *1390 We find the award adequately compensates Mrs. Berthelot for her injuries and is not excessive.
With respect to Robbie Key's injuries, the trial court awarded special damages of $316.00 together with general damages of $2,000.00. This award was based upon the trial court's determination that the only injury to Robbie's knee attributable to the accident was the aggravation of a pre-existing condition.
It is clear that where a defendant's negligent action aggravates a pre-existing injury, the victim must be compensated for the full extent of his aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La. 1980). However, before recovery can be awarded for the aggravation of such pre-existing condition, the victim must establish a causative link between the accident and his current status. Jefferson v. Landwehr, 409 So.2d 351 (La.App. 1st Cir.1981), writ denied, 413 So.2d 498 (La.1982). Since there is no causative link between Robbie Key's knee injury and the accident other than the aggravation of a pre-existing condition, we find, as did the trial court, that the only injuries sustained by Robbie Key as a result of this accident were abrasions to his left knee and swelling. The trial court's award is well within his discretion and is neither inadequate nor excessive. Based upon these facts, we find plaintiffs' assignment of error no. 7 is without merit.

CONCLUSION
For the above and foregoing reasons, judgment of the trial court is affirmed. Plaintiffs are to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Although the trial judge, in his written reasons for judgment, awarded Robbie Key special damages in the sum of $316.00, the formal judgment signed on September 14, 1983, fails to make such an award. This discrepancy is not an issue in this appeal.
[2] The trial judge's written reasons reflect an award to Mrs. Berthelot for general damages in the sum of $25,000.00 plus $11,311.09 for special damages. The formal judgment, however, awards a total of $35,017.99 as the amount of damages, "less amounts previously paid ..." This variance is not an issue in this appeal.
[3] No appeal was taken from that portion of the trial court judgment awarding damages to Beth Berthelot. Therefore, that portion of the judgment is final and not before us on appeal.