781 F.2d 1061
 19 Fed. R. Evid. Serv. 1461, Prod.Liab.Rep.(CCH)P 10,864
Thomas Aubrey MOORE, Plaintiff-Appellee,
v.
JOHNS-MANVILLE SALES CORPORATION, et al., Defendants,
Standard Insulations, Inc., Armstrong World Industries,
Inc., and Raymark Industries, Inc., Defendants-Appellants.
Jack Wendell ROBINSON, Plaintiff-Appellee,
v.
JOHNS-MANVILLE SALES CORP., et al., Defendants,
Standard Insulations, Inc., Armstrong World Industries,
Inc., and Raymark Industries, Inc., Defendants-Appellants.
Glenn Ray LLOYD, et ux., Plaintiffs-Appellees,
v.
JOHNS-MANVILLE SALES CORP., et al., Defendants,
Standard Insulations, Inc., et al., Defendants-Appellants.
 Nos. 85-2037 to 85-2039.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 30, 1986.
 
 Mehaffey, Weber, Keith & Gonsoulin, Sandra F. Clark, Gene M. Williams, Beaumont, Tex., Boswell & Hallmark, John H. Boswell, A. David Carlson, Butler & Binion, Michael B. Schwartz, Houston, Tex., for Standard Insulations, Inc.
 David L. Tolin, R. Lyn Stevens, Beaumont, Tex., for Fibreboard Corp.
 Boswell & Hallmark, John H. Boswell, A. David Carlson, Houston, Tex., for Armstrong World.
 Butler & Binion, Michael B. Schwartz, Houston, Tex., for Raymark Industries.
 Gail C. Jenkins, Beaumont, Tex., Robert E. Ballard, Andrew T. McKinney, IV, Lawrence Madeksho, Baker & Botts, Arthur Stamm, Richard Josephson, Houston, Tex., for Celotex Corp.
 Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, Robert E. Ballard, Houston, Tex., for Glenn Ray Lloyd.
 Appeals from the United States District Court for the Southern District of Texas.
 Before THORNBERRY, RUBIN and JOLLY, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 Texas apportions the damages recovered by a plaintiff in a product liability case among the defendants in accordance with "their relative roles in causing the injuries."[1] We hold that, under the law of Texas applicable in this diversity case, the jury properly apportioned the liability among the defendant manufacturers of asbestos-containing products for causing personal injury to workers who handled their products. Even though the degree of relative causation may not have been established scientifically, we reject the contention that the defendants should bear the liability pro rata.
 
 I.
 
 2
 These three separate actions were consolidated and tried to a jury. Each of the plaintiffs, Thomas Moore, Jack Robinson, and Glenn Ray Lloyd, proved by expert medical testimony that he was suffering from asbestosis. Each of the many defendants asserted cross-claims against the others for contribution. In response to special interrogatories, the jury found that each plaintiff was exposed to the products of each of the defendants, that each defendant's products were defective and unreasonably dangerous, and that these products were a producing cause of each plaintiff's disease. The jury awarded Moore $400,000 in damages, and, in response to a special interrogatory, allocated the causation among twelve defendants in percentages ranging from 1% to 24%, the figures for each being set forth in the footnote.[2] The jury awarded Robinson $950,000 in damages, allocating causation among ten defendants in percentages ranging from 5% to 20%.[3] The jury awarded Lloyd $600,000 and allocated the liability among the same ten defendants in different percentages, ranging from 1% to 25%.[4]
 
 
 3
 Upon reconsideration of a motion filed by some of the defendants, the district court entered judgment notwithstanding the verdict and decided that each defendant was liable for a pro rata share of the damages. This judgment n.o.v. is appealed by three defendants found liable by the jury in each case for 5% or less, but held liable by the court for a pro rata share of the judgments.
 
 
 4
 Last year, in Duncan v. Cessna Aircraft Company,[5] the Texas Supreme Court adopted a comparative causation basis for allocating liability among several defendants in product liability cases. Duncan established that, if any defendant is held strictly liable, all defendants shall be liable to the plaintiff jointly and severally for the entire amount but, as among themselves, each of the defendants is to be held liable only for its percentage share in causing the injury.[6] Interpreting Duncan, this circuit said in Shipp v. General Motors Corporation,[7] that Texas law casts the burden on defendants to show the amount that each should contribute.
 
 
 5
 Duncan dismisses pro rata contribution as "crude headcounting."[8] It adopts comparative causation instead as "a feasible and desirable means of eliminating confusion and achieving efficient loss allocation in strict liability cases."[9] Following Duncan, we said in Dartez v. Fibreboard Corporation,[10] that the jury in an asbestos product liability case "must apportion the liability between 'all whose action or products combined to cause the entirety of the plaintiff's injury.' "[11]
 
 
 6
 The trial court found that insufficient evidence was presented to the jury to enable it to apportion causation. Although in diversity cases the substantive law of Texas governs the respective liabilities of defendants and the recovery awarded to plaintiffs, the federal standard of review is applied to determine whether the evidence presented in the trial court was sufficient to create a jury question.[12] That test, as we said in Boeing v. Shipman,[13] is whether there is "substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."
 
 
 7
 At trial, a number of doctors testified that, if a person were exposed to many different products containing asbestos, there would be no way to determine precisely which product caused the disease and that exposure to each product would have contributed in part to its etiology. One expert further submitted "that there is no way to divide causation." Other evidence presented suggested that some persons are more susceptible to asbestosis than others, that the threshold for injury varies, and that the extent of duration of exposure that may cause the disease cannot yet be determined accurately. The appellee manufacturers argue simply that only a physician is competent to testify about the cause, diagnosis, or treatment of asbestosis and that the uncontradicted expert medical evidence showed that the cause of asbestosis cannot be divided.
 
 
 8
 But the jury also heard evidence that asbestosis is caused by the inhalation of asbestos fibers. It is a dose-related disease, in that the greater the quantity of asbestos fibers a person inhales and the longer the period of time during which he inhales the fibers, the more likely he is to contract the disease and the more severe it is likely to be. Various doctors and other experts testified that, while individual susceptibility to asbestosis varies, pleural thickening is a result of asbestos exposure and that pleural thickening increases as exposure to asbestos fibers increases. The testimony also suggested that mere exposure to asbestos fibers does not result in asbestosis but the more extensive the exposure, the greater the likelihood that a person will develop the disease, and the greater the amount of asbestos in a product and the greater the release of the asbestos fibers into the ambient air, the greater the hazard.
 
 
 9
 The evidence presented established that the products of the various defendants contained differing amounts of asbestos and that asbestos fibers were more readily released into the ambient air from some products than from others. Experts testified that the asbestos fibers in some products made by some the defendants, like cloth, are encapsulated in other materials, and are not readily released into ambient air. On the other hand, insulation products, also made by some of the defendants, are so manufactured that asbestos fibers are easily released in large quantities. Testimony established that the products made by the defendant, Standard Insulations, contain only 1% asbestos. The products of other defendants contain a much greater proportion.
 
 
 10
 Other experts testified to threshold limits: an individual exposed to certain relatively small quantities of asbestos in the ambient air, say 5 million particles per cubic foot of air, is not likely to develop asbestosis. They testified that there are three different forms of raw asbestos, chrysotile, amosite, and crocidolite; each creates a different degree of hazard. Chrysotile fiber, for example, is soluble. It may be dissolved in the body while other asbestos fibers, being insoluble, will remain in pleural tissue.
 
 
 11
 Juries are often asked to make difficult decisions and, even when expert evidence is available to assist them, they are not bound to follow the experts.[14] The jury may discredit expert testimony and base its decision on its collective judgment and experience. Juries determine whether or not an illness was caused by a particular injury, the extent and duration of disability, and, in the present cases, whether the products of any defendant did or did not contribute to the cause of the plaintiffs' injuries. In none of these decisions is the jury controlled, although it may be guided, by the expert witnesses.
 
 
 12
 In applying Duncan to the apportionment of liability among settling defendants, we found in Dartez[15] and in Gideon v. Johns-Manville Sales Corporation,[16] that the evidence was insufficient to show that some asbestos-containing products contributed to causing the plaintiff's asbestosis. If the factfinder is expected to decide from the evidence that the use of one asbestos-containing product did not contribute to the disease suffered by a worker who handled this and other products, it should also be able at least to approximate the degree to which those products that pass the "some effect" level caused the disease.
 
 
 13
 The appellees, seeking to support pro rata contribution, argue that, because medical doctors cannot determine whether the asbestos-containing products of one manufacturer caused an individual to develop asbestosis or whether the injury was caused by the products of another manufacturer, all defendants, regardless of the number sued, the type of products manufactured by each manufacturer, and the extent of exposure to each of these products, should bear equal responsibility for any award of damages. Assuming arguendo that the medical testimony supports the thesis that the cause of asbestosis is indivisible, sufficient evidence was presented to this jury to warrant its decision that exposure for different periods of time to products containing different amounts of asbestos fiber, emitted in different quantities, would play greater or lesser roles in causing the injury. The Tenth Circuit stated in a recent decision, "There is no rule requiring the jury to accept one of several expert postulations on causation. Expert witness testimony is subject to the same tests of credibility and weight as is any other admissible evidence."[17]
 
 
 14
 We recognized Webster v. Offshore Food Service, Inc.,[18] that, although "the trier of fact is not bound by expert testimony and may substitute its own common-sense judgment for that of the experts," it "would not be at liberty to disregard arbitrarily the unequivocal, uncontradicted and unimpeached testimony of an expert witness, where ... the testimony bears on technical questions of medical causation beyond the competence of lay determination."[19] The inapplicability of Webster to this case is demonstrated by the fact that the expert medical testimony did not meet its stringent criteria, so as to give the medical testimony decisive and conclusive force.
 
 
 15
 Nothing in Shipp v. General Motors Corporation[20] mitigates against apportionment of liability. In that case, the issue was the burden of proof incumbent on a plaintiff who seeks to recover for uncrashworthiness of an automobile. In Shipp, there was but one defendant, and no issue was submitted to the jury on either contributory fault of the plaintiff or on the comparative fault of any third party. The manufacturer sought to require the plaintiff to prove not only the existence of a safer design, but also "the nature and extent of the injuries she would have suffered had it been utilized."[21] We saw nothing in Duncan to require this.[22] Instead, we interpreted Duncan not as increasing the plaintiff's burden of proving causation, but as simply allowing "a non-negligent plaintiff [to] recover her total damages regardless of allocated percentages, from any or all of the joint and severally liable defendants. The injured plaintiff is thereby compensated and the defendants are left to themselves to quarrel as to contribution."[23]
 
 
 16
 Here the defendants followed that course. The jury resolved the quarrel, and we are unable to say that the record so lacks substantial evidence in support of its determination that the district court was justified in rendering a judgment n.o.v.
 
 
 17
 Finally, appellees argue, that the product identification lists, which set out the various job sites where, and insulation products with which, each plaintiff worked during his insulating career should not have been admitted over appellee's objection that the lists were hearsay.
 
 
 18
 The district court gave no reason for overruling the sole objection to the lists' admissibility, that is, that they were hearsay. We find they were admissible, however, under Federal Rule of Evidence 1006, which allows the "contents of voluminous writings [and] recordings ... [to] be presented in the form of a chart, summary, or calculation."[24] The product identification charts compiled by the plaintiffs list the material to which each plaintiff was exposed, the manufacturer of the products, and the plaintiff's employer, job site and year of exposure. They appear merely to summarize the information received by the jury through oral testimony or other exhibits received into evidence and, as such, do not constitute hearsay.[25] Hence, we do not find that the district court abused its discretion in admitting the charts into evidence.
 
 
 19
 In the Moore action, the jury erroneously allocated a 5% share of causation to Combustion Engineering, a party that has been voluntarily dismissed by the plaintiff. The court's ruling in Moore is, therefore, REVERSED and the case is REMANDED for a determination of the share of damages to be allocated to and paid by each remaining party in accordance with the jury's verdict. With respect to the other two actions, the judgment n.o.v. is REVERSED and the district court is directed to enter judgment in accordance with the jury verdict. In addition, appellants are entitled to interest on the sums of money paid out to plaintiffs in excess of what each would have paid had the trial court entered judgment in accordance with the jury's findings.
 
 
 
 [1]
 Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 430 (Tex.1984)
 
 
 [2]
 
 Armstrong World Industries, Inc. 5%
Celotex Corp. 10%
Combustion Engineering 5%
Eagle Picher Industries, Inc. 24%
Fibreboard Corp. 5%
Forty-Eight Insulations, Inc. 10%
Owens-Corning Fiberglas Corp. 20%
Owens-Illinois, Inc. 5%
Pittsburgh Corning Corp. 5%
Raymark Industries, Inc. 5%
Ruberoid Company, a division of GAF
 Corp. 1%
Standards Insulations, Inc. 5%
 
 
 [3]
 
 Armstrong World Industries, Inc. 5%
Celotex Corp. 10%
Eagle Picher Industries, Inc. 20%
Fibreboard Corp. 10%
Owens-Corning Fiberglas Corp. 15%
Owens-Illinois, Inc. 10%
Pittsburgh Corning Corp. 15%
Raymark Industries, Inc. 5%
Ruberoid Company, a division of Gaf 5%
 Corp. 5%
Standard Insulations, Inc. 5%
 
 
 [4]
 
 Armstrong World Industries, Inc. 1%
Celotex Corp. 12%
Eagle Picher Industries, Inc. 25%
Fibreboard Corp. 5%
Owens-Corning Fiberglas Corp. 15%
Owens-Illinois, Inc. 20%
Pittsburgh Corning Corp. 10%
Raymark Industries, Inc. 5%
Ruberoid Co., a division of GAF Corp. 3%
Standard Insulations, Inc. 4%
 
 
 [5]
 665 S.W.2d 414 (Tex.1984)
 
 
 [6]
 Id. at 429
 
 
 [7]
 750 F.2d 418, 425 (5th Cir.1985)
 
 
 [8]
 665 S.W.2d at 430
 
 
 [9]
 Id. at 427
 
 
 [10]
 765 F.2d 456 (5th Cir.1985)
 
 
 [11]
 765 F.2d at 474 (quoting Duncan, 665 S.W.2d at 428)
 
 
 [12]
 Martin v. American Petrofina, Inc., 779 F.2d 250, 251 (5th Cir.1985) (citing Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129, 1143 (5th Cir.1985))
 
 
 [13]
 411 F.2d 365, 374 (5th Cir.1969) (en banc)
 
 
 [14]
 Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 929-30 (10th Cir.1984), cert. denied, 105 S.Ct. 176
 
 
 [15]
 765 F.2d at 470-71
 
 
 [16]
 761 F.2d 1129, 1145 (5th Cir.1985)
 
 
 [17]
 Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 930 (10th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984) (emphasis in original)
 
 
 [18]
 434 F.2d 1191 (5th Cir.1970)
 
 
 [19]
 Id. at 1193
 
 
 [20]
 750 F.2d 418 (5th Cir.1985)
 
 
 [21]
 Id. at 424
 
 
 [22]
 Id. at 425
 
 
 [23]
 Id
 
 
 [24]
 Fed.R.Evid. 1006
 
 
 [25]
 See United States v. Evans, 572 F.2d 455, 491-92 (5th Cir.), cert. denied, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); United States v. Gold, 743 F.2d 800, 816 (11th Cir.1984). See generally 4 Wigmore on Evidence Sec. 1230 (Chadbourn rev. 1972)