DOUCET, Judge.
This is an appeal from one of twelve cases previously consolidated for trial on the issue of liability of the Department of Transportation & Development (DOTD) and severed for separate trials to determine damages. The trial court awarded damages to Dwight Prentiss Miller in the amount of $1,018,945.60. We affirm the judgment of the trial court and adopt the excellent reasons for judgment articulated by Judge Bond, and attach them hereto as Appendix A.
The defendant, DOTD, appeals stating that the lost wages awarded by the trial *994 court are excessive in that the figure was based on the assumption that Mr. Miller would earn at least $12.32 per hour if he had not been injured. This assumption, defendant argues, is not supported by the plaintiffs work history. However, with regard to the measure of damages for lost wages, the Supreme Court stated in Folse v. Fakouri, 371 So.2d 1120 (La.1979):
“What plaintiff earned before and after the injury does not constitute the measure. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment or diminution of earning power. And while his earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Damages should be estimated on the injured person’s ability to earn money, rather than what he actually earned before the injury.” (Emphasis supplied)
The record reveals that Mr. Miller only sporadically held steady salaried employment. He earned the amount of $12.32 per hour in 1981 only, while employed as an industrial insulator. We do not, however, believe that this inconsistent work history is demonstrative of a lack of earning capacity. Mr. Miller was a musician by vocation. Before the accident, he played guitar with a locally popular band and was trying to break into the music business. He had substantial earnings from his performances, which were never reported on an income tax return. Therefore, although Mr. Miller never pursued full-time employment, he demonstrated himself capable of earning up to $12.32 per hour. His physical disabilities leave him incapable of working as a manual laborer as he did in the past. His memory problems have impaired his ability as a musician. As a result we find no error in the trial judges award of $544,903.00 for loss of earning capacity.
The defendant further argues that the trial judge, in awarding $450,000.00 in general damages “for plaintiffs injuries and disabilities”, compounded the loss of income award and gave a double recovery for disability. In light of the extensive injuries suffered by the plaintiff, involving substantial past and future medical treatment, we see no abuse of discretion in this award.
“An injured party is entitled to damages for past and future pain and suffering, loss of past and future earnings, permanent disability and incurred related medical expenses where such damages are supported by competent evidence. Reeves v. Louisiana and Arkansas Railway Company, 304 So.2d 370 (La.App. 1 Cir.1974), writ denied, 305 So.2d 123 (La.1974); Barrois v. Service Drayage Company, 250 So.2d 135 (La.App. 4 Cir.1971), writ denied, 259 La. 805, 253 So.2d 66 (1971); Brignac v. Pan American Petroleum Corporation, 224 So.2d 84 (La.App. 3 Cir.1969)
Buckley v. Exxon Corp., 399 So.2d 1225 (La.App. 3rd Cir.1981).
Accordingly, separate awards for loss of earning capacity and permanent disability are appropriate and not an abuse of discretion.
Since the trial judge committed no abuse of discretion in his award of damages, this court may not alter that award. Reck v. Stevens, 373 So.2d 498 (La.1979).
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the defendant, DOTD.
AFFIRMED.
APPENDIX A
No. 81-6492
14TH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU
BOND, Judge.
This is one of twelve cases previously consolidated for trial on the issues of liability. Judgment was rendered assessing liability against the State of Louisiana as a result of a defective expansion joint on the Interstate Highway No. 10 bridge over the Calcasieu River at Lake Charles. That judgment has become final and the cases *995 were then severed for separate trials on the issues of damages. Reference is made to the previous opinion of the court for details of the accidents, which involved about twenty (20) vehicles in various clusters of collisions.
Trial of the issue of damages herein demonstrated that plaintiff, with one passenger, was returning to Lake Charles from a meeting of hunting guides just adjourned west of the Calcasieu River. His pickup truck was among the last group, about five or six vehicles, entangled in collisions about halfway down the bridge in the two eastbound traffic lanes. Both lanes were blocked by the vehicles in various positions where they came to rest.
Plaintiff had exited his vehicle and walked forward to inquire about occupants of other vehicles. He was walking westward toward his vehicle when an eighteen wheel truck-trailer rig, out of control, smashed into the cluster of vehicles as it proceeded down the incline at a substantial speed. It demolished the other vehicles, resulting in three deaths of their occupants. Plaintiff was struck and knocked through the air over the approximately four foot high concrete barrier, impacting into the westbound roadway immediately in front of a Lake Charles City Police officer who had stopped to render assistance.
Mr. Miller was rendered unconscious. Shortly thereafter he was transported by ambulance to Lake Charles Memorial Hospital. Emergency examinations determined that he had sustained injuries consisting of: several broken ribs, a punctured lung, multiple compound fractures of one leg, a severe cerebral concussion and it was suspected he had sustained internal abdominal injuries. Plaintiff was unable to respond to oral instructions or questions, although he was then apparently conscious and responded to pain.
The broken leg was splinted in the emergency room in order to stabilize it to prevent further injury. An emergency exploratory surgical procedure was performed on plaintiffs abdomen and it was determined that there was no serious internal injuries in that area. A lesser surgical procedure was performed to place a drain into the chest cavity in order to remove blood infiltrating from the injured lung. X-rays did not reveal any fracture of plaintiffs skull.
Examination and treatment indicated plaintiff had sustained bruising of the brain which, for several days, prevented oral communication. He could not talk.
It was not practical for the orthopedist to attempt reduction of the broken leg until several days after the accident. An infection developed in the interim, likely due to the lung injury, making it highly inadvisable for the orthopedist to attempt an open reduction of the fracture. A closed reduction was accomplished and a plaster cast applied. During the period before any open reduction could be attempted, the two fractures slipped and the bone knitted, overlapping at both sites. The result was that the leg is now one and one-half inches lesser in length than the other leg.
The lung injury and rib fractures healed without particular difficulty, leaving a lesion on the lower lobe of the right lung. This is not now particularily significant.
The cerebral concussion resulted in a permanent disability of an unusual nature. According to medical testimony, a portion of the brain was destroyed by the bruising it received. This resulted in plaintiff having lost a substantial portion of his capacity to retain the information he receives. More simply, plaintiff now has the ability to remember new information for only a short period, of time, only minutes, for the most part.
Plaintiff’s leg presents a difficult medical problem. Medical testimony demonstrates the possibility of surgical procedures which would result in the tibia being severed diagonally at the sites of the fractures, moved into proper position, and hopefully regain about half of the lost length. This is shown to be surgery of a highly specialized type, not available in this area. The estimated period of total incapacity is expected to be about six months, with plaintiff requiring total care during that time.
*996 It is shown that such surgery is dangerous and the results problematical, at best. Even if successful, the leg would still be about three-fourths of an inch shorter than previously. If not successful, the danger of eventual amputation is substantial. Without surgical correction, the effect of the short leg is expected to begin degenerative changes in the lower spine and opposite hip, resulting in total disability from those problems, discounting the other problems.
Another possible surgical intervention would be to remove some bone from the opposite leg in order to shorten it to the same length as the injured leg. It is not expected that this will be attempted.
Physicians estimate that plaintiff has a 25% permanent disability of the injured leg. The court accepts that the disability disqualifies plaintiff from any type of labor for which he has experience, and disqualifies him entirely from competition therefor in the labor market.
The disability problem is further complicated by the brain injury. Medical testimony is that, while plaintiff has memory of his former physical work, he is not capable of remembering instructions to carry out assigned tasks. Neither can he learn anything new, such as would qualify him for any different types of work. In the words of Dr. Willis, “he has nothing to build on.”
Mr. Miller has worked at various menial jobs as a laborer, with his only mechanical skill being that of an industrial insulator, the highest paying job he has performed. The wage rate for that job at the time, 1981, was $12.32 per hour.
Mr. Miller held salaried jobs only sporadically in his work history. His highest reported income, for tax purposes, has been slightly over $3,000.00 in one year. However, the facts indicated his actual earnings were substantially greater.
Plaintiff is a musician. His instrument, the guitar. Prior to his injuries he performed with a small band, in nightclubs and at private functions. He earned $100.00 for each performance and his group was popular and in demand. He wrote some music and lyrics, and made one record that has not gained popularity. It was customary that he was paid in cash, and he obviously did not feel compelled to report and pay taxes thereon. In any event, his earnings apparently amounted to $400.00 to $600.00 a week from his musical endeavors.
This plaintiff was a few months less than age 25 at the time of his injuries.
Subsequent to plaintiffs lengthy period of recovery from his injuries he has only been able to find work as a solo entertainer in a lounge for $50.00 for each of two performances a week. This is through the indulgence of a friend who owns the lounge. The difficulty is that plaintiff cannot learn any new tunes, but must rely on playing ones he knew by rote prior to the accident. Even so, he often forgets the lyrics during his performance and must then improvise by diverting to humming the music as he plays the guitar. A friend frequently attends and offers prompting, as inconspicuously as possible.
There is no doubt that plaintiff suffers considerable and frequent embarrassment as a result of his memory problem, both in his musical performances and in his daily association with friends and relatives. To forget the subject under discussion with a friend can be no less than humiliating. To find it necessary to carry written instructions from others, simply to accomplish family errands, can be no less than demoralizing.
The record makes it abundantly clear that Mr. Miller’s life has been shattered and his ambitions permanently thwarted. Improvement is not possible. The brain does not mend itself. The loss of brain cells is permanent and irreversible.
The proof is evident that this plaintiff is permanently disabled, without the ability to earn a livelihood. He may be able to continue to earn a pittance through his efforts at entertainment, but that is dependent on the good will and accommodation of friends, which cannot be relied upon.
*997 The parties have stipulated that plaintiffs past medical and related expenses are in the sum of $19,542.60, and property damages are in the sum of $4,500.00. Awards for those amounts will be granted.
Testimony concerning the probable cost of future medical expenses is vague. The likelihood of substantial expenditures therefor will be considered in the award for general damages.
Loss of income, past and future, considering a growth rate of seven percent per annum and a discount factor of nine and one-half percent per annum, will be awarded in the total sum of Five Hundred Forty-Four Thousand Nine Hundred and Three Dollars ($544,903.00).
General damages for plaintiff’s injuries and disabilities are awarded in the sum of Four Hundred Fifty Thousand Dollars ($450,000.00).
The foregoing considered, judgment in favor of plaintiff, Dwight Prentiss Miller, and against defendant, the State of Louisiana, through the Department of Transportation and Development, is granted in the total sum of One Million Seventeen Thousand Nine Hundred Forty-Five Dollars and Sixty cents, ($1,017,945.60), together with legal interest as provided by law.
Judgment in accordance with the foregoing will be signed on presentation to the court.
All court costs are assessed against defendant.
Lake Charles, Louisiana, this 10th day of August, 1984.