**Henry L. HOWELL, Plaintiff-Appellee,**

**and**

**Crown Zellerbach Corp.,
Intervenor-Appellee,**

**v.**

**GOULD, INC. and Continental Casualty
Co., Defendants-Appellants.**

**No. 85–3372.**

United States Court of Appeals,
Fifth Circuit.

Sept. 22, 1986.

Francis G. Weller, New Orleans, La., for Gould, Inc.

Donald D. Bann, Mandeville, La., Robert C. Stern, Perrin C. Butler, Metairie, La., for Howell.

Christopher M. Moody, Iddo Pittman, Jr., Hammond, La., for Crown Zellerbach Corp.

Before WILLIAMS, JOLLY and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In this Louisiana law diversity action, a jury found appellant Gould, manufacturer of a switch box, liable to appellee Howell under negligence and strict product liability theories. The manufacturer appeals, contending the evidence is insufficient to support the jury's verdict, the damages are excessive, and the jury instructions were incorrect. We find its arguments inadequate to justify reversing the district court's judgment.

## I. FACTS

Appellee, Howell, was employed by Crown Zellerbach Corp. as a maintenance man at its wood products division plant in Pontchatoula, Louisiana. On September 6, 1983, one of the plant's employees told Howell that a trimsaw was not working. Howell undertook repairs as part of his regular duties. He first checked the trimsaw and then traced the wiring of the trimsaw through its conduit to the switch. Howell turned the switch off and opened it to check the lugs below the fuses. Finding no problem with the lugs, Howell proceeded to examine the fuses. To do this, it was necessary for Howell to check the lugs at the bottom of the switch with the power on and the switch open. To open the switch with the power on, Howell had to by-pass the safety mechanism. He did this by pushing up the safety interlock with his finger. The switch box then exploded.

As a result of the explosion, Howell suffered burns to his hands, face, nose, and throat and a perforated left eardrum. Injury from the blast extended down into Howell's bronchial tubes. This aggravated his pre-existing emphysema, and Howell is now disabled due to his lung condition.

Howell filed suit against appellant Gould, Inc., the manufacturer of the switch. The jury found that a defect in the design or construction of the switch caused the injury, that Gould was negligent, and that there had been no negligence on the part of Howell. The jury awarded Howell $350,-000 damages for his injury. Gould appeals from the judgment entered on the verdict.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant Gould vehemently argues that there is no basis for the jury verdict. The record, however, reveals a classic con-

flict of testimony under oath. In reviewing the denial of Gould's motions challenging the jury verdict, this Court must consider the evidence in the light most favorable to appellee Howell who opposes the motions. The standard by which we review the jury's verdict is set out in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc):

> [I]f there is substantial evidence opposed to the motions [for directed verdict and judgment notwithstanding the verdict], that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury ... [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Id.* at 374.

The heart of appellant's argument is that Howell's theory is physically impossible. Howell theorized that the switch was defective because it failed to control an electric arcing that occurred when he tried to turn the switch on. Appellant claims that such an arc could not have occurred for two reasons. First, the "best evidence" of the experts was that arcing only occurs when the switch is being turned off. Since Howell was in the process of turning the switch on, Gould contends an arc could not have occurred. Second, appellant urges there could not have been an arc because there was no "load" on the unit.

A full reading of the record does not support appellant's characterization of the evidence. As to appellant's first claim we observe initially an argument as to what is the "best evidence" must perish on sterile ground in reviewing a jury verdict. The jury decides what is the best—the most persuasive—evidence, not the court. But moving beyond this general argument, appellant distorts the testimony of the experts who testified for both sides. The expert witnesses stated that arcing can take place not only when the switch is turned off but also when the switch is turned on if there is not a good connection.

■ As for appellant's second contention, the only evidence that there was no "load" on the line was the bald assertion of the maintenance foreman. His expertise and formal training in the area of electricity are admittedly limited. The jury was free to disregard such testimony. *Moore v. Johns-Manville Sales Corp.*, 781 F.2d 1061, 1065 (5th Cir.1986). We cannot second-guess the jury's credibility choice.

■ Appellant raises other arguments which are essentially rehashes of jury arguments. Quite simply, both sides presented evidence to support their respective theories of the cause of the accident, and the jury believed Howell's version. We find that the district court properly denied the challenge to the substance of the jury verdict by denying the motions for a directed verdict and for judgment notwithstanding the verdict.

### III. JURY INSTRUCTIONS

Appellant contends that the trial court erred by not submitting its instruction on assumption of risk to the jury. The proposed instruction precluded recovery by appellee by stating that if he was found to have assumed the risk his claim was barred. Appellant argues that appellee assumed the risk when he attempted to bypass the safety mechanism with his finger when the switch door was open. Whether assumption of risk can constitute a complete bar to recovery since Louisiana adopted the doctrine of comparative fault is still in question. *See, e.g., Aguillard v. Langlois*, 471 So.2d 1011, 1015 (La.App.Ct. 1985); *Bell v. Jet Wheel Blast*, 462 So.2d 166, 172 (La.1985). *But see Brown v. Harlan*, 468 So.2d 723, 728 (La.App.Ct.1985).

We need not reach this question, however, because there is no evidence of assumption of risk. To show assumption of risk, (1) a plaintiff must have actual knowledge of the dangerous condition, (2) must understand and appreciate the risk in-

volved, and (3) must voluntary expose himself or herself to such risk. *Dorry v. Lafleur*, 399 So.2d 559, 562 (La.1981).

■ There is no evidence that Howell had subjective knowledge of danger presented by turning the switch on. Both parties agree that the door of the switch box had to be open with the power on to examine the fuses. To do this, the safety interlock had to be defeated. The purpose of the safety interlock is to prevent "laymen" from opening the switch box with the power on. As appellant's own expert conceded, Howell's method of by-passing the safety switch, the conduct about which appellant complains, should not have resulted in an explosion. We conclude that the district court properly refused to instruct the jury on assumption of risk.

■ Next appellant asserts it was entitled to its requested charge on intervening cause. Appellant admits that the jury was instructed on this issue, but it contends that the court should have adopted its suggested language. The district court instructed the jury that the plaintiff had to prove the defect in the product existed when it left the control of the defendant. The jury was also instructed that in making their determination of whether the product was safe when it left the control of the defendant they could consider whether the product "operated satisfactorily and without failure for a substantial period of time." The district court's instructions accurately stated Louisiana law, *see Scott v. White Trucks*, 699 F.2d 714, 717 (5th Cir. 1983), and appellant was entitled to no more than that.

■ The last instruction appellant claims the district judge should have submitted to the jury flatly misstates Louisiana law. The requested instruction was to the effect that a plaintiff cannot recover if he or she was contributorily negligent. Louisiana has discarded contributory negligence serving as a complete bar to recovery. La.Civil Code Article 2323; *Bell v. Jet Wheel Blast*, 462 So.2d 166, 167 (La.1985); *Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967, 971 (La.1985). The trial court quite properly refused to give the jury this erroneous charge. We conclude that appellant's objections to the jury charges are without merit.

## IV. DAMAGES

■ Appellant attacks the jury's $350,-000 general damage award as excessive.[1] The scope of our review is limited to whether the district court abused its discretion in denying appellant's motion for new trial on this ground. As we have previously stated:

The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to "shock the judicial conscience," "so gross or inordinately large as to be contrary to right reason," so exaggerated as to indicate "bias, passion, prejudice, corruption, or other proper motive," or as "clearly exceed[ing] that amount that *any* reasonable man could feel the claimant is entitled to."

*Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir.1983) (citations omitted). We, therefore, examine the extent and permanence of appellee's injuries to determine whether the award is beyond the maximum justifiable award supported by the evidence in the record. *Gleason v. Hall*, 555 F.2d 514, 520 (5th Cir.1977); *Keyes v. Lauga*, 635 F.2d 330, 336 (5th Cir.1981).

■ The major thrust of appellant's argument is that it cannot be held responsible for appellee's present disabling lung condition. Appellant maintains that the evidence establishes that the injured employee

1. Appellee claims that appellant may not complain about excessive damages because it did not preserve this issue for appellate review. The record shows, however, that appellant did properly preserve this issue by presenting the issue to the district court in its motion for new trial. *Baker v. Dillon*, 389 F.2d 57, 58 (5th Cir.1968); *Carlton v. H.C. Price Co.*, 640 F.2d 573, 577 (5th Cir.1981).

suffered only an injury to his ear and burns on his hands, arms, and face from the explosion. After appellee recovered from these injuries, appellant claims that he could have returned to work by November of 1983, approximately two months after the accident. Appellee's lung problems, appellant urges, are solely the consequence of his admitted preexisting emphysema and his smoking habit.

Under Louisiana law, a defendant takes the victim as he finds him. *Perniciaro v. Brinch,* 384 So.2d 392, 395 (La.1980). A well-established corollary of this rule of law is that the defendant is responsible in full for the aggravation of a plaintiff's pre-existing condition. *Id.* at 396. The specific jury instruction in this case limited appellant's liability to the amount of aggravation of appellee's physical disability caused by the injury. Of course appellee also had to prove a causal link between the accident and his current status. *Berthelot v. Imes,* 459 So.2d 1384, 1390 (La.App.Ct. 1984); *Hale v. Champagne,* 365 So.2d 55, 56 (La.App.Ct.1978).

Our review of the record reveals that appellee met his burden of proving that his pre-existing emphysema was not disabling. Only after the accident did his lung condition deteriorate to the point where he could not return to work. Appellee's treating physician testified that appellee's preexisting emphysema was of the type that could "go along a good while without difficulties." He stated that from the nature of the burns on appellee's face, nose, and throat, he had clear indication that the blast injury had extended down into his bronchial tubes. The physician concluded that the blast injury from the explosion substantially aggravated appellee's preexisting lung condition and caused part of appellee's disability. The jury had the

right to conclude that this testimony was correct. There is a sufficient evidentiary basis, therefore, for appellant to be held responsible for the aggravation of the victim's lung condition to the level of disability.

The jury's award of $350,000 damages might at first look to be excessive. But in the light of the facts proved in this case we cannot say that the award exceeds the bounds of a reasonable jury conclusion. The parties stipulated that appellee's past medical expenses were approximately $25,000. Both parties' economic experts agreed the appellant suffered approximately $25,000 in lost back wages.[2]

Expert testimony supported an award of $130,726.20 for loss of future earnings. Appellant attacks this latter figure using a tired and worn argument that Louisiana courts have repeatedly rejected. It claims that appellee's work history does not support such an award since he had held other lower paying jobs before his employment by Crown Zellerbach, and he had been employed by Crown Zellerbach for only eight months before the accident. Appellant also points out that the Crown Zellerbach plant where Howell had been employed had been closed at the time of trial. We reject this argument out of hand. Appellee's figures are substantiated by his proof that he was capable of earning approximately $17,900 per year.

The Louisiana law has been stated:

What the plaintiff earned before and after the injury does not constitute the measure [of damages for future wages]. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment of earning power.

---

**2.** From the record, it appears that the Crown Zellerbach plant was closed approximately two months before the trial. Consequently, appellant was not entitled to two months of the back pay. *Seals v. Morris,* 423 So.2d 652, 657 (La. App.Ct.1982). The $25,000 figure the experts for both sides established, however, was based upon the assumption that appellee would receive his salary up until the date of trial. Con-

sequently, given the facts, the back wages should have been approximately $22,000.

The appellant cannot succeed in complaining about an inaccuracy in this figure now when he presented testimony that corroborated the appellee's expert testimony. In fact, appellant's expert witness calculated the appellee's back wages loss to be $25,916.14, which exceeded the appellee's figure.

And while his earning capacity at the time of injury is relevant, it is not necessarily determinative of his future ability to earn. Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury.

*Folse v. Fakouri,* 371 So.2d 1120, 1123 (La.1979) (citations omitted). Applying this language, a Louisiana court in *Miller v. Department of Transportation and Development,* 484 So.2d 993, 994 (La.App.Ct. 1986) found that an award for future earnings based on an hourly wage of $12.32 was proper even though the plaintiff had earned this amount for only one year, and he had been employed sporadically before the accident.

 The rest of the verdict, approximately $170,000, compensates appellee for his physical disability and his pain and suffering.[3] This amount is not so excessive as to shock the conscience of the Court. Appellee suffered burns to his face, hands, and arms which left scars. He also suffered a perforation of his tympanic membrane which resulted in hearing loss, a roaring sound in his ear, and a predisposition to ear infections. The injury to his lungs from the explosion, however, is by far the most critical one. The record contains credible evidence that this injury has left him disabled. He suffers from shortness of breath and coughing which requires mechanical breathing devices and a great deal of medication to treat. His ability to get around is limited. He now spends most of his time indoors in a controlled environment. He is unable to pursue his hobbies of camping, hunting, and fishing. He is able to walk outdoors at most for ten to fifteen minutes at a time. The jury had the right under the record to credit this evidence in full. As to the reasonableness of the amount of the verdict on pain and suffering, compare *Hansen v. Johns-Mans-*

*ville Products Corp.,* 734 F.2d 1036, 1047 (5th Cir.1984) (pain and suffering award reduced to $250,000, the maximum verdict for a man who suffered from temporary lung-related ailments for thirteen months); *Simon v. Hooker Chemical Co.,* 489 So.2d 372 (La.App.Ct.1986) (pain, suffering, and disability award reduced to $350,000, the maximum award for a 56-year-old man who suffered fractures of wrists and hip but who was able to continue recreational activities). We conclude that the record supports the general verdict of the jury as to the amount of damages.

## V. CONCLUSION

Finding no merit to appellant's contentions, we affirm the judgment of the district court.

AFFIRMED.

---

3. Appellee claims that the evidence supports future medical expenses of $4,000 for ear surgery. This evidence, however, is too speculative to consider. A plaintiff must prove some degree of certainty that future medical expenses would be incurred. *Martinez v. U.S. Fidelity & Guar-* anty Co., 423 So.2d 1088, 1092 (La.1982); *Mathews v. Hanover Ins. Co.,* 428 So.2d 1273 (La.App. Ct.1983). Appellee failed to do so. The evidence indicated that although he needed the operation, his chronic cough made the surgery inadvisable.