LEAR, Judge.
This litigation arises as a result of an accident which occurred in 1976 at the premises of defendant, Carl Harris.
Mr. Harris was a man of about sixty-eight years of age who had had open heart surgery, which severely limited his physical exertions.
Mr. Harris had growing on his yard a rather large oak tree and he was desirous of cutting two limbs from said tree.
Knowing that Mr. Hall, the petitioner, had a power saw, Mr. Harris asked him if he would be willing to come and cut those limbs. Mr. Hall agreed to bring his power saw over and do that for Mr. Harris as a simple act of friendship. The two men had been friendly for many years and were related by marriage. Hence, there was no discussion of any money to be paid to Mr. Hall for his services and, in fact, Mr. Hall had performed services for defendant Harris on other occasions without the exchange of any money or anything else of value between them.
About September 9, 1976, petitioner Hall went to the residence of defendant Harris, taking his power saw with him. Mr. Harris possessed a ladder sufficient for the purposes intended.
The two men established the ladder against the tree in a secure position and petitioner went up the ladder with his saw *717 and without any trouble at all succeeded in trimming the first limb completely away from the tree. During this entire proceeding, defendant Harris stood at the foot of the ladder and steadied it for petitioner. The evidence seems conclusive that it was an understanding between the two men that during the entire operation defendant Harris was to remain at the foot of the ladder and exert whatever efforts were needed to prevent the ladder from slipping or sliding out of position.
After the removal of the first limb, the men then changed the position of the ladder and Mr. Hall ascended the ladder to a height of about sixteen feet with his saw, leaving defendant Harris at the foot of the ladder, again assuming the responsibility of securing the ladder in position.
Petitioner started to make a cut into the second limb and the limb started sagging toward the earth until it was almost touching the ground. Suddenly and without warning to petitioner, defendant Harris left his post at the foot of the ladder, went to the end of the limb and jerked it downwards. Petitioner had no notice of Mr. Hall’s intention to do this thing and it was done without any warning to him whatsoever.
Mr. Harris’ tug at the limb caused it to break completely away from the tree and in some manner the butt end of the severed and broken limb was thrown against the ladder, causing it to start sliding down the other limb that it was resting against. Petitioner threw the power saw from him and, in turn, was thrown from the ladder to the ground below where he landed on both elbows and both knees.
Defendant Harris had three defenses which he urged to this claim. One, that he was guilty of no negligence; two, that plaintiff was guilty of contributory negligence; and three, that plaintiff had assumed the risk of the undertaking.
The jury in the trial court below brought in a verdict in favor of the defendants, but gave no hint as upon which defense it refused plaintiff recovery.
It is unfortunate that the trial judge did not propound certain interrogatories to the jury in an attempt to determine the reasons for their verdict, but such was not the case.
If the jury refused verdict for the plaintiff on the ground of the first defense mentioned above, its finding was clearly contrary to the law and the evidence. Mr. Harris was without doubt guilty of a negligent act in leaving his place at the foot of the ladder and going to the tip end of the branch and tugging at it with such force that it broke completely away from the uncut portion of the limb and fell against the ladder upon which petitioner was standing.
If the jury returned its verdict for the defendant on the ground of the second defense mentioned above, there again such a verdict would have clearly been contrary to the law and the evidence because there is absolutely no evidence whatsoever of any negligence or any negligent act having been committed by petitioner Hall. That leaves this Court with the conclusion that the jury found that petitioner had assumed the risk of the endeavor.
The trial judge instructed the jury as to the law to be applied to the doctrine of assumption of risk. We find the following in the judge’s instructions to the jury:
“If you conclude that the plaintiff has established the first two elements of his case, then you must also determine whether the defendant has proved that the plaintiff has nonetheless relieved the defendant of responsibility for the harm caused to plaintiff by assuming the risk of that harm. If you find that plaintiff, Hugh Hall, assumed the risk of harm that happened to him, then you must render a verdict for the defendant. On this issue, the defendant has the burden of proof.
“To conclude that the plaintiff, Hugh Hall, assumed the risk, you must find that Carl Harris has proved two things by a preponderance of the evidence: that the plaintiff fully understood the danger which was involved and the plaintiff voluntarily exposed himself to the danger, or risk of harm. In this connection, you *718 must determine the question on the basis of what this plaintiff in this lawsuit understood and what he encountered voluntarily.”
These instructions are correct insofar as they go, but one important point was omitted in the instructions and that point is that a servant never assumes the risk of an intervening act of negligence which was the proximate cause of the accident. No one is required to foresee the negligence of his employer or any third person. (See Weadock et al. v. Eagle Indemnity Co. et al., La.App.2d Cir., 15 So.2d 182, and Hawayek v. Simmons et al., La. App. Orleans, 91 So.2d 49.)
Therefore, we see that the jury could have found the petitioner guilty of assuming the risk involved in the endeavor erroneously because not having been properly briefed upon the law cited above and if this was the case the jury’s verdict was clearly contrary to the law and the evidence and, therefore, this Court must reverse the judgment of the jury and give judgment for petitioner in this matter.
Inasmuch as this Court feels that the finding of the jury should be reversed, it becomes incumbent upon us to establish the damages Mr. Hall suffered.
Mr. Hall was taken to the emergency room of the Baton Rouge General Hospital immediately after the accident. Dr. F. C. McMains, a very reputable and capable orthopedic surgeon, examined him in the emergency room and heard petitioner’s complaints of injury to both of his arms, his chest and low back.
Dr. McMains determined an obvious dislocation of the left elbow and took notice of some pain over the right elbow, but determined that it was not dislocated.
X-rays were taken of plaintiff’s elbows, chest and neck. The x-rays showed that the humerus was completely out of socket and the fracture of the distal proximal radius which was displaced.
There was a displacement of certain bone fragments. X-rays of the right elbow showed a minor compression fracture through the radial neck.
The patient was immediately transferred to the operating room where Dr. McMains performed closed reduction of the left elbow. Postoperative x-rays again showed a displacement of a bony fragment.
The left arm was immobilized in a splint extending from the base of the metatarsals up to the armpit.
During the patient’s stay in the hospital he was administered morphine hypodermics for pain. However, Dr. McMains became fearful of morphine addiction and then prescribed narcotics by mouth.
Mr. Hall was discharged from the hospital on the 15th day of September and returned to Dr. McMains’ office on the 23rd day of September, at which time the original cast was removed and the arm was immobilized in a long arm cast which could be removed and then replaced with the aid of Ace bandages.
Subsequently thereto, plaintiff underwent a total of forty physical therapy treatments designed to restore the motion in his left elbow. He was allowed to return to work about the 8th of November of 1976, but continued to take therapy treatments.
The pain and discomfort of the right elbow gradually subsided and at the time of this trial were nonspecific.
Plaintiff has a reduced extension of his left arm and his rotation movement has been reduced approximately thirty degrees short of full supination.
Dr. McMains assesses a fifteen percent disability to the left arm.
The prognosis of pain is that plaintiff will suffer pain and discomfort periodically for the rest of his life.
Dr. McMains did not put the right elbow in a splint, but put it in a sling. He admits that this was a more painful thing, but he did not want to completely immobilize both of the patient’s arms and he wanted to leave one arm in a fairly movable position so that the patient could take care of his bodily needs for himself.
*719 Considering the physical pain and discomfort suffered by plaintiff, together with the mental anguish which naturally followed as to the result of the injury to his future employment and activities, we feel a verdict of thirty-five thousand and no/100 ($35,-000.00) Dollars would not be unreasonable, especially in view of the tremendously de-valuated dollar of today.
In addition to this, plaintiff suffered a loss of One Thousand Five Hundred Thirty-five and 29/100 ($1,535.29) Dollars as special damages and expenses.
For the above reasons the judgment of the trial court is reversed and judgment is rendered in favor of plaintiff-appellant and against the defendants, jointly and in soli-do, in the sum of Thirty-six Thousand Five Hundred Thirty-five and 29/100 ($36,535.29) Dollars, together with interest from date of judicial demand until paid, appellee-defend-ants to pay all costs.
REVERSED AND RENDERED.