**Andrew HOVANEC, Plaintiff-Appellee,**

**Liberty Mutual Insurance, Intervenor-Appellee,**

v.

**HARNISCHFEGER CORP., Defendant-Appellant.**

**No. 85–3651.**

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1987.

Robert E. Couhig, Jr., Michael D. Carbo, Adams & Reese, New Orleans, La., for defendant-appellant.

Michael R. Guidry, H.M. Etheredge, Owen J. Bradley, New Orleans, La., for Hovanec.

Kristin H. White, Metairie, La., for intervenor, Liberty Mutual.

Before GOLDBERG, REAVLEY and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

Andy Hovanec had four of his fingers cut off in a tragic industrial accident. He brought suit in Louisiana state court seeking recovery against Harnischfeger Corporation, the manufacturer of a crane that, because of a latent defect, indiscriminately left Hovanec with something more closely resembling a grisly and grotesque protuberance than a hand. Harnischfeger removed the case to federal district court, based on diversity of citizenship. Following a three day trial, the jury rendered its answers to special interrogatories submitted by the court and found that the defect in the crane was a proximate cause of Hovanec's harm.

Harnischfeger takes this appeal from an adverse ruling on its motion for a new trial, made pursuant to Fed.R.Civ.P. 59, asserting that the trial court erred in formulating the jury questions. Harnischfeger challenges the jury questions regarding assumption of risk and employer-negligence, and the court's failure to submit a question concerning contributory negligence. Although the district court's questions and its decision not to submit a question regarding contributory negligence may have been technically flawed, we find that the errors were harmless.

The record reveals that there was insufficient evidence for a reasonable jury to conclude that Hovanec was contributorily negligent or assumed the risk of his considerable harm. In addition, as a matter of Louisiana law, Hovanec's recovery may not be reduced in proportion to the degree of

contributory fault of his employer. We thus affirm the judgment below.

## I. Factual Background

The facts of this case are largely uncontroverted. On January 25, 1982, Hovanec was working at the construction site of the University of New Orleans Sports Arena. As an ironworker, Hovanec's task on this eventful day was to construct a cat walk by connecting steel hangers from the bottom of roof trusses—while he worked on joists some 80 or 90 feet up in the air.

Having finished connecting one of the hangers, Hovanec began making his way across the joist to assist a co-worker, John Jacobson, in connecting the next hanger. While "walking the iron"—which was only four *inches* wide—Hovanec put his hand on the stationary wire cable of the Harnischfeger crane. The wire rope was only eight inches away from the beam he was walking on, and Hovanec touched the cable in order to maintain his balance while manuevering around it. Without any warning to Hovanec, the cable became taut and propelled Hovanec's hand into the unguarded sheave of the crane, severing four of his fingers. Miraculously, Hovanec was able to maintain his balance—holding his sanguine and mascerated hand while perched atop the four inch beam—until helped by his co-workers into a basket that lowered him to the ground.

Unbeknownst to Hovanec, his supervisor D.W. "Buster" Everett—who was working on the ground—had given the crane operator a command that caused the accident. Everett signaled the operator to hoist the next load of hangers, without first checking to ensure that there were no ironworkers in proximity to the dangerous cable. Everett was preoccupied with preparing the next load to go up, and thus tragically took his eye off the beam.

As a result of the defective, unguarded, in-running nip point where the crane cable connected with a pulley, and of Everett's misfortunate, momentary myopic inattention, Hovanec's normally uneventful journey across the iron turned into a precarious perambulation of profoundly tragic proportion. He was hospitalized for thirty days, has had numerous operations, and will never again be able to work in his trade of some 17 years.

At trial, the jury responded to the special interrogatories submitted by the court, determined that Harnischfeger had produced a defective product, and found that the defect was a proximate cause of Hovanec's considerable harm. Thus, the jury awarded Hovanec over $375,000 in damages. The district court denied Harnischfeger's motion for a new trial, and it appeals that denial.

## II. Assumption of Risk

Harnischfeger first argues that the district court's jury interrogatory relating to assumption of risk was incorrect as a matter of law.[1] Notwithstanding this contention, there simply is no evidence in the record to support a finding that Hovanec assumed the risk of the defect or of the employer's negligence that were the proximate causes of his injury. Therefore, we need not address Harnischfeger's legal assertion. *See Bass v. United States Department of Agriculture,* 737 F.2d 1408, 1414 (5th Cir.1984) ("We will not reverse for an alleged error in the jury instructions if we find, based upon the record, that the challenged instruction could not have affected the outcome of the case.").

■ As a matter of Louisiana law, to make out a case of assumption of risk that bars or reduces the plaintiff's recovery,[2] the defendant must prove by a preponder-

---

1. The relevant interrogatory required the jury to determine whether "the plaintiff [was] at fault in causing his injuries by voluntarily assuming the risk, and if so, was his fault the sole cause of his injuries." Rec.Vol. II at 410.

2. It is unclear, subsequent to the Louisiana legislature's readoption of the doctrine of comparative fault, whether assumption of risk completely bars or merely reduces proportionally the plaintiff's recovery. *See Howell v. Gould,* 800 F.2d 482, 485 (5th Cir.1986); *infra* note 3. This too is a question we need not decide.

ance of the evidence that: (1) The plaintiff had full knowledge of the risk; (2) the plaintiff appreciated the risk; and (3) the plaintiff voluntarily encountered or consented to the risk. *See, e.g., Howell v. Gould,* 800 F.2d 482, 485–86 (5th Cir.1986); *Dorry v. Lafluer,* 399 So.2d 559, 562–63 (La.1981); *Langlois v. Allied Chemical Corp.,* 249 So.2d 133, 140–41 (La.1971); *Lanclos v. Rockwell International Corp.,* 470 So.2d 924, 932 (La.App. 3d Cir.), *writ denied,* 477 So.2d 87 (La.1985). The inquiry is subjective; what counts for purposes of assumption of risk is not what a reasonable person should have known, appreciated or encountered, but what the plaintiff himself fully knew, appreciated, and actually encountered. *See, e.g., id.* In sum, to establish assumption of risk, the defendant must show the plaintiff's sentience, the plaintiff's certain knowledge that he or she would be endangered by his or her acts.

■ Harnischfeger asserts that Hovanec assumed the risk of his injury because when asked at trial whether he "recognized that if [the crane] started up, ... [he] would be in a dangerous predicament," Hovanec responded in the affirmative. Rec. Vol. V at 30. This testimony does not come close to establishing a case of assumption of risk. Indeed, it is largely immaterial.

Under Louisiana law, Hovanec's recovery can be reduced or barred by the doctrine of assumption of risk only if he had particularized knowledge of the *"specific* defective condition" that caused his harm. *Carpenter v. State Farm, Fire & Casualty Co.,* 411 So.2d 1206, 1209 (La.App. 4th Cir.), *writ denied,* 415 So.2d 951 (La.1982) (emphasis added); *see Dorry,* 399 So.2d at 562. The record, however, is devoid of evidence that Hovanec had knowledge of the hazards that were a cause-in-fact, a substantial cause of his injury. *See, e.g., Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co.,* 242 La. 471, 137 So.2d 298, 302 (1962); *Hayes v. Louisiana,* 467 So.2d 604, 607–08 (La.App. 3rd Cir.),

*writ denied,* 475 So.2d 354 (La.1985). There is no evidence that Hovanec was even remotely aware of the defective crane sheave that caused his injury. Additionally, one searches the record in vain to find any indication that Hovanec was aware of the possibility that his supervisor would improperly signal the crane operator to send up the load while his hand was on the cable.

Put simply, the particular risks that caused Hovanec's injury were not intrinsic to the defective crane cable. Rather the danger, which became all too real to Hovanec, could only have eventuated as a result of both the errant signal by Everett and the defect in the crane. No evidence in the record supports a conclusion that Hovanec had any knowledge, let alone full knowledge, of these risks.

"No one is required to foresee the negligence of his employer or any third person." *Hall v. Safeco Ins. Co.,* 374 So.2d 715, 718 (La.App. 1st Cir.), *writ denied,* 378 So.2d 431 (La.1979); see *Barrois v. Service Drayage Co.,* 250 So.2d 135, 141 (La.App. 4th Cir.), *writ denied,* 259 La. 806, 253 So.2d 66 (La.1971); *Bailey v. Trinity Universal Ins. Co.,* 124 So.2d 575, 577, 578 (La.App. 3d Cir.1960). Indeed, Hovanec testified that when he went across the beam and palmed the wire rope it was beyond his "wildest dreams" that Everett would signal the crane operator and a load would be sent up. Rec.Vol. V at 44. Because he had no subjective knowledge of the particular hazards that resulted in the loss of his fingers, Hovanec did not assume the risk of the injury. Therefore, irrespective of the propriety of the question submitted by the court to the jury, the interrogatory was harmless.

III. Contributory Negligence

Similarly, Harnischfeger asserts that the failure of the district court to submit a jury question regarding contributory negligence constituted error. Specifically, Harnischfeger posits that La.Civil Code Article

2323,[3] as construed in *Bell v. Jet Wheel Blast,* 462 So.2d 166 (La.1985), and its progeny, required the court to submit an instruction to the jury as to comparative negligence. This too is a question we need not reach, because there is no evidence in the record to indicate that Hovanec was contributorily negligent.

As a matter of Louisiana law, the standard for contributory negligence is whether the plaintiff took ordinary and reasonable care under the circumstances. *See, e.g., Bridgewater v. Department of Corrections,* 434 So.2d 383, 384 (La.1983). There is no doubt that Hovanec acted reasonably and in accord with the settled customs and rules of the industry.

All of Hovanec's contemporaneous co-workers testified at the trial. Each testified that Hovanec acted reasonably. Each testified that palming the wire cable of the crane was a common, natural, and instinctive practice, often necessary for ironworkers to maintain balance. Finally, all the workers with whom Hovanec labored—including Buster Everett and the crane operator—testified that it was Everett's responsibility to check above before signaling the crane operator to send up the load, which Everett conceded that he failed to do.

It is beyond cavil that Hovanec's reliance on his co-workers and his reliance on established safety precautions was reasonable and thus did not constitute contributory negligence. *See, e.g. Morgan v. Liberty Mutual Ins. Co.,* 323 So.2d 855, 858–59 (La.App. 4th Cir.1975), *writ denied,* 325 So.2d 282 (La.1976); *Barrois,* 250 So.2d at 141. Hovanec was not obliged to anticipate that the crane would send up the load, when it was Everett's task to ensure that no worker was dangerously close to the crane cable.

**3.** Article 2323 provides:

When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in

Hovanec could only be found to be at fault if he did not reasonably "guard against a *probable anticipated* danger." *Smith v. Lumbermens Mutual Ins. Co.,* 175 So.2d 414, 417 (La.App. 2d Cir.), *writ denied,* 247 La. 1089, 176 So.2d 146 (1965) (emphasis added). Thus, even were the doctrine of comparative negligence applicable in this case, Hovanec's recovery could not be reduced, because there is no evidence that the harm he complains of was in any way his fault.

## IV. Employer Fault

Harnischfeger finally asserts that the trial court's instruction as to the employer's negligence was erroneous.[4] This contention requires little discussion. In *Robertson v. Superior PMI, Inc.,* 791 F.2d 402, 410 (5th Cir.1986), we recently held that as a result of the Louisiana workers' compensation scheme, the employee-plaintiff's recovery from the manufacturer of a defective product in a products liability action cannot be reduced proportionately to the degree of fault of his or her employer. Therefore, the fault of Hovanec's employer, Sun Erection Company, acting through its agent Everett, is simply immaterial to this action.

## CONCLUSION

In this new and in some ways more humane industrial era (some atavists would say brave new world) fancy new tort theories have been invented by brilliant academics and crafty lawyers and recognized by great jurists to afford workers and consumers increased protection from the defective products of too often callous manufacturers. The doctrines of assumption of risk and contributory negligence have

proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.

**4.** This disputed jury interrogatory required the jury to find whether "a third party [was] at fault in causing the plaintiff's injuries, and if so, was the third party's fault the sole cause of his injuries." Rec.Vol. II at 411.

changed dramatically since Judge Cardozo wrote the landmark opinion in *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916). But this case requires neither legal inventiveness nor judicial giantism. Irrespective of the propriety of the jury questions submitted by the trial court, no reasonable person could have concluded that there was any evidence submitted at trial to establish Hovanec's fault. The decision of the trial court thus is AFFIRMED.