538 So.2d 670 (1989)
Deborah Roger, wife of/and Robert ROGER, Sr., individually and as Natural Tutors of their minor child, Robert Roger, Jr.
v.
Edward J. CANCIENNE, et al.
Nos. 88-CA-0640, 88-CA-1131.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1989.
Rehearing Denied March 15, 1989.
Writ Denied May 12, 1989.
*671 Sidney D. Torres, III, Gregory J. Noto, Roberta L. Burnes, Chalmette, for plaintiffs-appellees.
David V. Batt, Lisa Montgomery Lewis, Lobman, Carnahan and Batt, Metairie, for defendants-appellants.
Before BARRY, ARMSTRONG and BECKER, JJ.
BARRY, Judge.
This consolidated appeal concerns the amount of damages due as the result of an accident involving an auto and a van (used as a bus by Lake Castle Private School) in which Dana and Robert Roger, Jr. were riding. Mr. and Mrs. Robert Roger, Sr., on behalf of their minors Robert and Dana, sued Edward Cancienne, the driver of the auto, and Sheila Aucoin, the owner, Government Employees Insurance Company [GEICO], Aucoin's liability insurer, and Prudential Property and Casualty Insurance Company, the Rogers' uninsured motorist carrier.
Prudential third partied Mr. Cancienne. Cancienne and GEICO third partied Linda LeFler, the school van operator, Lake Castle, and State Farm Insurance Company, the liability insurer and uninsured motorist carrier of the van. In two supplemental petitions the Rogers amended their petition to include as defendants Lake Castle and State Farm Mutual Automobile Insurance Company, the school's liability and uninsured motorist carrier. Lake Castle third partied Mr. Cancienne, Ms. Aucoin and GEICO. The Rogers dismissed Prudential (which had filed a motion for summary judgment) without prejudice, but re-named Prudential as a defendant in a third amending petition, but ultimately dismissed Prudential with prejudice.
Prior to trial GEICO settled with the Rogers[1] who then dismissed Mr. Cancienne, Ms. Aucoin and GEICO with prejudice. The Rogers reserved their rights against all other defendants, including State Farm and Lake Castle. Liability was established through the pleadings and joint stipulations. Only Robert's damages were considered by the jury which awarded $10,000 for past damages, $35,000 for future damages, and $5,000 for past medical expenses.
The trial court sua sponte granted a judgment notwithstanding the verdict on October 23, 1987 and increased the award for Robert's damages to $125,000 plus $5,000 for past medical expenses. State Farm and Lake Castle filed a motion for a new trial (on the grounds that the JNOV should not have been granted) which was denied. State Farm and Lake Castle applied to this Court for writs alleging the trial court erred by granting the judgment without a motion. (No. C-8985).
While the writ application was pending, State Farm and Lake Castle appealed the October 23, 1987 judgment notwithstanding the verdict and the denial of their motion for a new trial. (No. 88-CA-0640).
This Court granted the writ, vacated the judgment notwithstanding the verdict, and remanded the case for further proceedings. Meanwhile, Lake Castle and State Farm filed a motion to enter the original verdict based on this Court's ruling in C-8985. The Supreme Court granted certiorari on the Rogers' application, amended this Court's judgment, and permitted the Rogers *672 to move for a judgment notwithstanding the verdict. Roger v. Cancienne, 521 So.2d 1140 (La.1988). The trial court denied the motion to enter the jury verdict.
The Rogers' motion for a judgment notwithstanding the verdict was granted by the trial court March 24, 1988 for $125,000 on behalf of Robert Jr., and $5,000 to Mr. and Mrs. Roger for past medical expenses.
State Farm and Lake Castle appeal the denial of their motion to enter the jury verdict and the March 24, 1988 judgment notwithstanding the verdict. (88-CA-1131). The appeals were consolidated; however, this Court previously vacated the October 23, 1987 judgment notwithstanding the verdict in No. 88-CA-0640.
State Farm and Lake Castle maintain the $50,000 jury verdict was proper and the $125,000 judgment is excessive.

FACTS AND MEDICAL TESTIMONY
On December 11, 1984 twelve year old Robert Roger was in a Lake Castle van which was rear ended by an automobile. Robert was knocked backward, then forward, and hit his right arm on a bench. Robert testified a bench was on each side of the van from front to back and he was sitting toward the front. There was a 12 inch piece of wood positioned to stop a person from sliding off the bench. At impact his right elbow was jammed between his body and the wooden barrier.
After he got home his arm was burning, felt tender, was swollen, and would lock or jam. That night after forty-five minutes of sleep the pain woke him and his parents took him to the hospital. He testified that he continues to experience burning, tenderness and pain. Robert said he never had an arm problem before the accident and his parents confirmed his testimony. After surgery the elbow did not lock, but he still experiences pain daily and cannot fully extend his arm. He takes extra strength Tylenol. Robert said he has trouble with simple daily tasks such as putting on shoes and socks and he cannot cast a fishing line, pull back a bow string or play the drums. His sports activities have been severely curtailed.
Robert Roger, Sr. testified that Robert had played baseball and football prior to the accident. After surgery Robert continued to experience daily tenderness and could not participate in those two sports. Mrs. Roger said that Robert was embarrassed and frustrated because he could not play. Although she conceded Robert could ride his three wheeler in front of the house and could do some activities, Mrs. Roger testified he could not participate fully.
Dr. Dan Seltzer, orthopedic surgeon, testified that on December 26, 1984 Robert complained of tenderness and a locking sensation in his elbow. X-rays were inconclusive so an arthrogram was taken on February 21, 1985. The radiologist and Dr. Seltzer saw an irregularity in the arm joint which existed prior to the accident and would have made Robert vulnerable to injury.
Robert had pain on March 27, 1985 so Dr. Seltzer recommended an arthroscopy, a procedure whereby a small scope is inserted into the joint. Robert was referred to Dr. Michael Brunet.
Dr. Brunet, orthopedic surgeon, testified that on April 19, 1985 Robert had limited motion on his right arm in the range of 45 to 110 degrees. Dr. Brunet diagnosed osteochondritis dissecans, i.e., a bone area loses its blood supply and pieces of bone or cartilage break off from that area. On June 13, 1985 Dr. Brunet performed the arthroscopy under general anesthesia. He found a small cartilage fragment had broken off in the back of the joint and he removed a piece about half an inch and smoothed the crater.
Robert had a difficult post-operative period and after three months did not have normal arm motion. Dr. Brunet feared the cartilage or bone was continuing to break off in small pieces, however, x-rays showed that the area was healing. The doctor said it would take two to three years for the arm to heal.
Dr. Brunet testified that the onset of osteochondritis dissecans was probably due to Robert's little league baseball activities. He stated it was likely Robert's pre-existing *673 condition would have healed except for the accident.
According to Dr. Brunet, after surgery Robert's arm extension increased to a range of 20 to 120 degrees. He will never be able to fully extend his arm or move his elbow to the 155 degree normal range. Dr. Brunet testified that in October, 1986 Robert had difficulty adapting to restricted activities and was very depressed. Robert cannot play baseball and may not play football again. His problem with dressing and daily tasks are caused by his inability to pick up his elbow.
Dr. Brunet testified that the grinding sensation Robert still experiences could be caused by the uneven bone surface or from low grade inflammation. He stated Robert will develop arthritis since he does not have a normal joint, although he could not be certain whether it would ever be symtomatic. Dr. Brunet said Robert has a fifteen percent permanent disability of his right arm and future employment could never include vigorous manual labor.

THE LAW
The trial court may grant a judgment notwithstanding the verdict on the issue of damages alone. Burleigh v. State Farm Insurance, 469 So.2d 270 (La.App. 3rd Cir.1985), writ denied 474 So.2d 1305 (La.1985); La.C.C.P. Art. 1811 F overruling Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162 (La.App. 3rd Cir. 1983). Where the trial court is convinced that reasonable minds could not differ as to the amount of damages in light of the evidence, the court should have the authority to grant the appropriate judgment notwithstanding the verdict. Official Comments to La.C.C.P. Art. 1811; Bellard v. CNA Insurance Company, 503 So.2d 1104 (La.App. 3rd Cir.1987), writ denied 506 So. 2d 1228 (La.1987).
On reviewing a judgment notwithstanding the verdict the appellate court must examine the record to determine whether the trial court's conclusions on quantum are manifestly erroneous. Webb v. Goodley, 512 So.2d 527 (La.App. 3rd Cir.1987); Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.1985), writ denied 476 So.2d 353 (La.1985).
An appellate court should not disturb quantum unless the trial court abused its "much" discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). Upon finding such an abuse the appellate court is not allowed to simply determine what is an appropriate award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The reviewing court is limited to the highest amount the factfinder could have reasonably awarded under the circumstances. Emerson v. Empire Fire and Marine Insurance Company, 393 So.2d 691 (La. 1981).

ANALYSIS
In his original reasons for judgment notwithstanding the verdict (on October 23, 1987) which are the basis for his March 24, 1988 judgment, the trial judge concluded that $10,000 for past pain and $35,000 for future pain and suffering, mental anguish, disability and disfigurement was "grossly inadequate for the damages proven at the trial."
The judge supported his conclusion with two cases which involve much older plaintiffs who had a fifteen percent disability of the left arm. In Derouen v. City of New Iberia, 415 So.2d 596 (La.App. 3rd Cir. 1982), the plaintiff who was 65 years old received $25,000. In Hall v. Safeco Insurance Company, 374 So.2d 715 (La.App. 1st Cir.1979), writ denied 378 So.2d 431 (La. 1979), the plaintiff was awarded $35,000.
We are concerned with Robert's early teenage years and his approximately sixty year life expectancy with such a debilitating permanent injury.
The trial judge notes Robert's pre-existing condition which made him vulnerable to such a serious injury. He observed Robert's limitation of motion in his dominant arm after surgery and his daily and continual pain while doing ordinary tasks. The judge considered the permanent disability as to future manual labor or any function involving torque to the elbow. The judge *674 points to Robert's inability to enjoy childhood sports and other activities, plus osteoarthritis in the right elbow and the disfiguring scar, and declared:
The accident caused the trauma which now causes the child almost daily pain and suffering and a lifetime physical impairment and disfigurement. The Court, as the jury must have, observed the child in Court, holding his arm in a position which obviously indicated the existence of a physical impairment. The elbow is scarred as a result of the surgery, but the disfigurement suffered by this child is the residual abnormal positioning of the arm which immediately attracts others' attention to the child's arm.
We conclude the March 24, 1988 judgment notwithstanding the verdict was not manifestly erroneous or an abuse of discretion as to quantum. Denial of appellants' motion for entry of the jury verdict was proper.
AFFIRMED.
NOTES
[1] According to the trial court's reasons for the October 23, 1987 judgment notwithstanding the verdict, the settlement was for GEICO's policy limits of $50,000. In brief, the Rogers state the settlement was for all damages to Dana and partial damages to Robert.