25 F.3d 1047
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Daniel CARPENTER, Plaintiff-Appellant,
v.
The RUST ENGINEERING COMPANY, a foreign corporation, Defendant,
Harnischfeger Corporation, a foreign corporation, and
Champion International Corporation, a foreign corporation,
Defendant-Appellees.
 No. 93-1290.
 United States Court of Appeals, Sixth Circuit.
 May 19, 1994.
 
 Before: JONES and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Daniel Carpenter appeals the grant of summary judgment in favor of Defendants-Appellees Harnischfeger Corporation and Champion International Corporation ("Harnischfeger" and "Champion" respectively) in this diversity/personal injury/products liability action. Plaintiff's appeal is without merit, and so we affirm.
 
 I. Facts
 
 2
 In September 1989, Plaintiff was an employee of Rust Engineering Company ("Rust"). Rust was a general contractor involved in constructing a new plant for Champion. In the course of his employment, Carpenter was covering and greasing the motors on four cranes, when one of the cranes, operated by a Rust employee, approached Carpenter from behind and ran over his right foot. Although Champion owned these cranes, and Harnischfeger manufactured them, they were ordered by Rust, built in accordance with Rust's specifications, erected by Rust, and operated exclusively by Rust.
 
 
 3
 Pursuant to Rust's specifications, the cranes were designed such that warning lights were supposed to go off automatically whenever the cranes were moving. In addition, also pursuant to Rust's specifications, the crane operator was supposed to turn on a manually operated siren whenever the crane was moving. These safety features are standard in the industry and comply with all applicable government regulations. Nevertheless, Harnischfeger had an automatic siren option available, but Rust declined to take it. At some point prior to the accident, a safety officer working for Champion asked Rust whether it would be desirable to have an automatic siren. This safety officer's job was to monitor whether Rust's safety team was doing its job; he had no supervisory authority over Rust employees.
 
 
 4
 The Rust employee operating the crane testified in deposition that he was using the siren, but other workers testified that they heard no siren at the time of the accident. Carpenter and others testified that the alarm system had worked in the past, and one engineer testified that he had certified the system as operational just three weeks before the accident. Further, testimony indicated that, immediately after the accident, all items--including the siren--were operational pursuant to specifications.
 
 
 5
 In May 1990, Carpenter filed a complaint against Harnischfeger and Rust in state court. Rust removed the matter to federal court. In April 1991, Carpenter filed an amended complaint adding Champion to the suit. Rust's motion for summary judgment was granted in January 1992, on the ground that Carpenter's claims were barred by the exclusive remedy provision of Michigan's Workers Compensation Act. Carpenter did not appeal this disposition.
 
 
 6
 Champion's motion for summary judgment was granted in May 1992, on the ground that Champion owed no duty to Carpenter. First, the court explained that under Michigan law, unless an owner retains control over significant elements of a construction project, the owner is not vicariously liable to an employee of a contractor. The court found that Champion's retention of control over the project was not significant enough for Champion to be vicariously liable to Carpenter. Second, the court found that Champion bore no direct, non-vicarious liability, because Rust alone had possession and control of the cranes, and Champion did nothing that was not primarily attributable to Rust to exacerbate the risk of harm to Carpenter. Carpenter appealed this disposition, and, in August 1992, we dismissed this initial appeal for lack of jurisdiction due to the existence of the claim against Harnischfeger that was pending in the district court.
 
 
 7
 In January 1993, the court below granted Harnischfeger were (1) reliance upon a manually operated siren rather than an automatic one constituted a design defect, (2) Harnischfeger failed to adequately warn Rust regarding the siren's safe use, and (3) the siren failed to operate due to a manufacturing defect. The court found, first, that Carpenter failed to show that Harnischfeger owed any duty of care to Carpenter. Second, the court held that Carpenter failed to make out a prima facie "design defect" case. Third, the court found, the crane's safety features were in accordance with Rust's specifications, and a manufacturer is not liable for a design in accordance with a purchaser's specifications unless the design is so obviously defective that the manufacturer knew or should have known that it should not be used. Fourth, the court found that the crane's operator was fully aware of his obligation to use the siren, so there was no failure to warn on Harnischfeger's part. Finally, the court found that there was no manufacturing defect on Harnischfeger's part. This appeal followed.
 
 II. Standard of Review
 
 8
 "We review a district court's grant of summary judgment de novo.... [I]n a motion for summary judgment, 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.' " Russo v. City of Cincinnati, 953 F.2d 1036, 1041-42 (6th Cir.1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and citing Vollrath v. Georgia-Pacific Corp., 899 F.2d 533, 534 (6th Cir.), cert. denied, 111 S.Ct. 345 (1990); Curry v. Vanguard Ins. Co., 923 F.2d 484, 485 (6th Cir.1991)).
 
 
 9
 Nevertheless, to overcome a motion for summary judgment, the non-movant must present a sufficient showing on each element of its case to put the matter before a jury. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").
 
 III. Discussion
 A. Design Defect
 1.
 
 10
 Plaintiff alleges three design defects: (1) the crane could operate even if the siren was disconnected; (2) the warning system was inadequate to warn those working above the crane; and (3) the warning system was inadequate because it did not operate automatically. Plaintiff presented expert testimony in support of his allegations. However, under Michigan law, the mere fact that an injury could have been prevented by the existence of an additional safety precaution is not enough to state a prima facie design defect case. Rather, a design defect plaintiff must present evidence that the challenged design was unreasonable in light of foreseeable risks and feasible alternatives. Owens v. Allis-Chalmers Corp., 326 N.W.2d 372, 378-79 (Mich.1982). A finder of fact in a design defect case must apply a "risk-utility balancing test" by considering "the alternatives and risks faced by the manufacturer and [determining] whether in light of these the manufacturer exercised reasonable care in making the design choices it made." Prentis v. Yale Mfg. Co., 365 N.W.2d 176, 183-84 (Mich.1984); see also Siminski v. Klein Tools, Inc., 840 F.2d 356, 358 (6th Cir.1988) (applying Michigan law as set forth in Owens and Prentis, holding that in order for a design defect claim to go to the jury, a plaintiff must present proof that, on balance, the risk versus the feasibility of other design alternatives shows the unreasonableness of the risk).
 
 
 11
 Plaintiff's expert testified that the accident was foreseeable, but Plaintiff failed to present any evidence regarding the existence of feasible alternatives, nor did he present any evidence regarding the utility of the challenged design. He failed to present any evidence that the type of injury Plaintiff suffered had ever occurred before, or that the risk of the injury was anything more than minimal. Consequently, under Michigan law, Plaintiff's expert testimony was not sufficient to put the issue to a jury.
 
 2.
 
 12
 There is another reason to reject Plaintiff's design defect claim. Under Michigan law, a manufacturer cannot be liable for following the design specified by a purchaser unless the design was "obviously" defective. Clark v. Seagrave Fire Apparatus, Inc., 427 N.W.2d 913, 918 (Mich.App.1988); Huff v. Ford Motor Co., 338 N.W.2d 387, 390-91 (Mich.App.1983); Hoverman v. Harnischfeger Corp., No. 90-1682 (6th Cir. August 14, 1991) (unpublished per curiam). In the present case, it is undisputed that Harnischfeger built the cranes according to Rust's specifications, and that Rust specified that the siren be manually operated. The court found that Plaintiff presented no evidence that the alleged design defect was obvious, emphasizing that Plaintiff readily admits that the design of the manually-operated siren meets all of the applicable governmental standards. Implicitly, the court reasoned that even if a system contains a defect, compliance with all applicable government standards indicates at least that the defect is not an obvious one. We find this implicit premise to be quite plausible.
 
 
 13
 Although Plaintiff maintains that his experts' testimony indicates that the defect in the warning system was indeed obvious, the passages in the record to which Plaintiff cites say no such thing. In these passages, Plaintiff's experts declare that the warning device was "insufficient," and that it had a "design defect," but they did not state that the system's shortcomings were obvious. Thus, Plaintiff has failed to advance any evidence of obviousness, and so has not met his burden for putting the question of the obviousness of the alleged defect to a jury.
 
 B. Failure to Warn
 1.
 
 14
 Under Michigan law, there is no duty to warn of a danger when the user already has actual knowledge of it. Morrocco v. Northwest Engineering Co., 310 F.2d 809, 810 (6th Cir.1962); Ferlito v. Johnson & Johnson Products, Inc., 771 F.Supp. 196, 200 (E.D.Mich.1991), aff'd, 983 F.2d 1066 (6th Cir.1992); Mowery v. Crittenton Hospital, 400 N.W.2d 633, 638 (Mich.App.1986); Dunn v. Lederle Laboratories, 328 N.W.2d 576, 582-83 (Mich.App.1982). Where a user of a product is already aware of a danger, a failure to warn of the danger cannot be the proximate cause of an accident. Dunn, 328 N.W.2d at 582.
 
 
 15
 In the present case, the crane operator testified that he was fully aware of his obligation to sound the siren whenever the crane was moving. Furthermore, the crane was delivered with an operator's handbook that instructed users to shut off power to the crane or to use a signal person during maintenance. Had these instructions been followed, Plaintiff would not have been injured. Based upon this, the district court held that Harnischfeger's failure to warn Rust could not have proximately caused Plaintiff's injury.
 
 
 16
 Plaintiff's only response to the district court's holding is that the question should have gone to the jury. However, the only case Plaintiff cites in support of this claim, Ferlito, actually lends support to the opposite conclusion. See 771 F.Supp. at 200 (holding that "no reasonable jury" could have found for the plaintiffs on their failure to warn claim because the undisputed evidence showed that they already recognized the risk of which they claimed they should have been warned). In the present case, Plaintiff points to no record evidence that impeaches or contradicts the crane operator's testimony or the existence of relevant instructions in an operator's handbook. Thus, Plaintiff has failed to demonstrate any genuine issue of material fact regarding his failure to warn claim.
 
 2.
 
 17
 There is another reason to reject Plaintiff's "failure to warn" claim. According to Antcliff v. State Employees Credit Union, 327 N.W.2d 814, 820-21 (Mich.1982), a manufacturer has no duty to warn a sophisticated user about the safe use of its non-defective product. The court found that the defendant, a manufacturer of scaffolding selling to professional riggers, should be able to presume that its customers understood the basic operation of its products. Id.
 
 
 18
 Antcliff's "sophisticated user" doctrine is directly applicable in the present case. Because Rust was a sophisticated user, Harnischfeger had no duty to warn Rust about the safe use of its non-defective product.[1]
 
 C. Manufacturing Defect
 
 19
 As the court below correctly found, Plaintiff failed to present evidence that there was a manufacturing defect in the siren. Plaintiff merely raised a conjectural possibility that the siren did not sound at the time of the accident due to a manufacturing defect. As the district court pointed out, however, in response to this conjectural possibility several witnesses testified that the siren had been in full working order on several occasions since the time Rust received the cranes from Harnischfeger, including on the day of the accident itself. Indeed, Plaintiff himself admitted that he had heard the siren sounding on every occasion prior to the accident on which he saw the crane moving. Plaintiff thus failed to present any evidence of a defect that would surmount Defendant's summary judgment motion.
 
 
 20
 D. Defendant's Motion for Summary Judgment Filed After
 
 Deadline
 
 21
 Plaintiff points out that Harnischfeger's motion for summary judgment was filed after the deadline sent by the district court. Plaintiff argues that it was clearly erroneous for the court to have considered the motion under these circumstances. Plaintiff cites no authority in support of this conclusion. Harnischfeger responds that a trial court is vested with discretionary authority to hear a motion for summary judgment, and that no prejudice resulted to Plaintiff by the court's exercise of its discretion. The court gave Plaintiff ample time to respond to the motion.
 
 
 22
 Harnischfeger is correct. The court set the deadline in an exercise of its discretion. There is no reason to conclude that the court cannot disregard its own deadline as a matter of discretion, especially in the absence of any prejudice to Plaintiff.
 
 E. Champion's Duty to Plaintiff
 1.
 
 23
 The district court held that Champion owed no duty of care to Plaintiff. Plaintiff argues that a Champion employee served as a safety officer, overseeing safety concerns on the construction project site. "Had the ... safety officer been performing his duties in a reasonably prudent and careful manner, he would most certainly have discovered the dangerous condition which was presented to the Plaintiff-Appellant in this matter." Carpenter Br. at 25. Further, Plaintiff argues that Champion took it upon itself to check the crane when it was first delivered, so Champion knew or should have discovered the existence of the design defect in the crane.
 
 
 24
 While we find some of Plaintiff's arguments on this issue to be unpersuasive, it is elementary that, if Champion took on the task of monitoring safety concerns at the project, or of checking the crane upon delivery, Champion bore an obligation to execute these tasks in a reasonably prudent manner. Thus, it is clear that Champion owed Rust's employees at the site some standard of care.
 
 
 25
 However, Plaintiff did not meet his burden of showing that Champion breached this duty. Though Champion owned the crane, it actually had very little to do with the crane. The crane was designed, installed, and controlled by Rust; Champion only purchased the crane based upon Rust's recommendation, and Champion did nothing that was not primarily attributable to Rust to exacerbate the risk of harm to Plaintiff.
 
 
 26
 In his complaint, Plaintiff listed four allegations regarding Champion's negligence:
 
 
 27
 [Champion's] negligence consisted of, but is not limited to, the following, to-wit:
 
 
 28
 A.) In failing to recognize that an overhead crane being used by employees of Rust Engineering was a dangerous instrumentality unless properly equipped with warning devices as provided by MIOSHA and OSHA Codes and in failing to inspect the overhead crane from time to time.
 
 
 29
 B.) In permitting an overhead crane to be operated by employees of Rust Engineering without the proper warning devices situated thereon.
 
 
 30
 C.) In failing to maintain the crane in a proper, prudent and safe manner for the use of Rust Engineering.
 
 
 31
 D.) In being generally careless, reckless and negligent in and about the premises.
 
 
 32
 J.A. at 21.
 
 
 33
 However, the record demonstrates that: Plaintiff admitted that the crane's warning devices did comply with MIOSHA and OSHA standards; the warning devices on the crane were proper according to the industry standard; and these devices were adequately maintained by Rust and were fully operational at the time of the accident. Thus, if Champion breached its duty of care in any of the ways specified in the complaint, it would have to be by failing to inspect from time to time, and by being "generally careless, reckless and negligent." However, in the contract between Champion and Rust, Champion fully delegated to Rust its responsibility to properly maintain all safety conditions; thus Champion had no duty to inspect from time to time. See Contract of August 1, 1988, between Champion and Rust, Sec. 14.5, quoted in Champion's Br. at 1-2. And finally, Plaintiff's briefs on appeal do not cite to any evidence of general negligence in the record, nor do they state what role this general negligence may have played in the accident that is at issue. Thus, Plaintiff failed to meet his burden of submitting evidence of a breach of any duty on the part of Champion.
 
 
 34
 In Plaintiff's brief on appeal, he alleges that Champion knew or should have known that an automatic siren was necessary, and breached its duty of care by allowing the crane to be used without such a siren. There are two problems with this argument, either one of which is fatal to Plaintiff's claim. First, Plaintiff has not made any case that an automatic siren was indeed mandatory; to the contrary, he has admitted that a manual siren complies with all regulations and meets the industry standard. Second, according to Plaintiff, Champion's safety officer did inquire with Rust's safety team as to the desirability of having an automatic siren. Rust determined that it was not necessary. In light of the fact that Champion hired Rust based in part on Rust's expertise, it was entirely reasonable, and not at all a breach of due care, to defer to Rust's judgment in this regard.
 
 
 35
 Plaintiff sets forth a premises liability argument that fails for similar reasons. Relying on the cases of Bluemer v. Saginaw Central Oil & Gas Serv., Inc., 97 N.W.2d 90 (Mich.1959), and Musser v. East Side Gear & Tool Co., 37 N.W.2d 890 (Mich.1949), Plaintiff argues that the defect in the crane existed at the time that it was turned over to Rust, and that an owner is liable to injuries to an invitee attributable to such a defect. Not only has Plaintiff failed to establish that the manual siren was a defect, but he has also misstated Michigan premises liability law. The owner is "not an insurer of the safety of invitees." Williams v. Cunningham Drug Stores, Inc., 418 N.W.2d 381, 383 (Mich.1988) (quoting Prosser & Keeton, Torts (5th ed.), Sec. 61, at 425). The duty that an owner owes to an invitee is not absolute, and does not extend to dangers that are apparent to the invitee. Id. (citing 2 Restatement of Torts, 2d, Sec. 343A, at 218). Rather, an owner satisfies his duty to an invitee if he "take[s] reasonable care to know the actual conditions of the premises and either make[s] them safe or warn[s] the invitee of dangerous conditions." Kroll v. Katz, 132 N.W.2d 27, 32 (Mich.1965). In the instant case, the so-called "defect" was fully known to Rust; indeed the manual siren was provided pursuant to Rust's own specifications. However, even if Rust had not known about the siren, Champion's safety officer did precisely what premises liability law requires--he made himself aware of the actual condition of the crane, and, by inquiring as to whether an automatic siren would be desirable, he warned Rust about the existence of the "defect." Thus, Plaintiff has failed to prove that Champion committed any breach of a duty owed to Plaintiff.
 
 2.
 
 36
 Plaintiff also challenges the district court's findings regarding vicarious liability. Plaintiff declared to the court below and has re-asserted on appeal that he did not plead liability through a theory of respondeat superior, but rather has pled only direct negligence. It follows that Plaintiff has waived this issue on appeal. Nevertheless, for the sake of completeness, we shall review the parties' "vicarious liability" arguments.
 
 
 37
 Under Michigan law, an owner of property is ordinarily not vicariously liable "for injuries caused by a carefully selected contractor to whom he has delegated the task of erecting a structure." Plummer v. Bechtel, 489 N.W.2d 66, 72 (Mich.1992) (quoting Funk v. General Motors Corp., 220 N.W.2d 641, 644 (Mich.1974)). A corollary of this rule is that an owner is not generally responsible for job safety on a construction project. As an exception to this general rule, however, an owner is responsible when it retains significant control over the construction project. Id.
 
 
 38
 In distinguishing between situations in which an owner does or does not retain significant control, the Plummer court adopted doctrine set forth in the Restatement of Torts:
 
 
 39
 It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.
 
 
 40
 Id. at 73 n. 17 (quoting 2 Restatement of Torts, 2d, Sec. 414, comment c, at 387-88). Thus, according to Plummer, an owner retains "significant control" when a contractor is not free to ignore the owners suggestions and recommendations, such as when the owner has the right to hire or terminate subcontractors. Id. at 73.
 
 
 41
 In the present case, the district court found that Champion did not retain sufficient control to be held liable for Plaintiff's injuries. On appeal, Plaintiff alleges that Champion was supervising the job site for safety concerns, and had full control over any and all safety problems on the site. Thus, Plaintiff argues, Champion did retain sufficient control over the job site to be vicariously liable under Plummer and Funk.
 
 
 42
 Champion responds that its retained control was minimal. One employee monitored Rust's safety performance. This employee did not give any direct orders, but merely reported any problems he noted to Rust's safety team. Champion did not retain the power to hire or to terminate any subcontractors. According to Plummer, such a minimal level of supervision over safety issues is insufficient to create vicarious liability.
 
 
 43
 Champion presents the correct view of Michigan/Restatement law. Plaintiff's argument to the contrary is without merit.
 
 F. Proximate Cause
 
 44
 The district court found that the only negligence alleged against Champion involved the allegedly inadequate warning system on the crane. It found that, even if Champion had failed to apprise Rust of the allegedly defective warning system, the failure still would not have proximately caused the injury insofar as Rust already knew that the warning system was manually operated. Plaintiff argues that the question of proximate cause should have gone to a jury. But Plaintiff fails to state how, given that Rust deliberately selected the manual siren system, any rational jury could ever conclude that, but for Champion's alleged failure to warn, the accident would not have occurred. Thus, Plaintiff's argument is without merit.
 
 IV. Conclusion
 
 45
 For the foregoing reasons, we affirm the district court's award of summary judgment.
 
 
 
 [1]
 The court below correctly held that, under the "sophisticated user" doctrine, Harnischfeger had no duty to warn or instruct Rust and Rust's employees regarding the safe use of Harnischfeger's products. From this true premise, however, the court derived the erroneous conclusion that Harnischfeger owed no duty whatsoever to Plaintiff. In reaching this conclusion, the court failed to keep the doctrine in proper perspective. While the "sophisticated user" doctrine is relevant to Plaintiff's "failure to warn" claim, it is irrelevant to Plaintiff's design defect and manufacturing defect claims. Given that Harnischfeger placed its products in the stream of commerce, and that Rust's employees were foreseeable users of these products, it cannot be doubted that Harnischfeger owed a duty of care to Rust's employees, including Plaintiff, to manufacture its products free of design and manufacturing defects so as to eliminate unreasonable risks of foreseeable injury. See, e.g., Fabbrini Family Foods, Inc. v. United Canning Corp., 280 N.W.2d 877, 883 (Mich.App.1979); Gautheir v. Mayo, 258 N.W.2d 748, 749 (Mich.App.1977)
 Plaintiff challenges the district court's analysis of the "sophisticated user" doctrine, relying on Hovanec v. Harnischfeger Corp., 807 F.2d 448 (5th Cir.1987). This case, however, involves Louisiana law rather than Michigan law, involves contributory negligence and assumption of risk rather than the "sophisticated user" doctrine, and did not involve any alleged failure to warn. Indeed, it does not so much as mention the latter two doctrines. The case is entirely inapposite, and Plaintiff's argument borders on being frivolous.
 Plaintiff also argues that there was no evidence that Rust has knowledge equal to or greater than the manufacturer with regard to the alleged design defect. This argument, too, is inapposite, for the "sophisticated user" doctrine does not involve a design defect, but rather involves a failure to warn. Further, Antcliff does not require that the purchaser must know as much as or more than the manufacturer, but only that it must be sophisticated enough to not require instruction. Plaintiff cites no law in support of his proposition that a greater level of knowledge than this is required.